669 F.2d 759
 108 L.R.R.M. (BNA) 3153, 215 U.S.App.D.C. 373,
92 Lab.Cas. P 13,139
 BUILDING MATERIAL and Dump Truck Drivers, Teamsters Local
Union No. 36, etc., Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent,
California Dump Truck Owners Association, Larry Shepard,
Associated General Contractors of America, et al.,
Intervenors.
CALIFORNIA DUMP TRUCK OWNERS ASSOCIATION, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent,
Building Material and Dump Truck Drivers, Teamsters Local
No. 36, Intervenor.
Larry SHEPARD, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent,
Building Material and Dump Truck Drivers, Teamsters Local
No. 36, Associated General Contractors of America,
California Dump Truck Owners
Association, Intervenors.
 Nos. 80-1503, 80-1807 and 80-1808.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued May 7, 1981.
Decided Dec. 4, 1981.
 
 Richard D. Prochazka, San Diego, Cal., for Building Material and Dump Truck Drivers Teamsters Local Union No. 36 petitioners in No. 80-1503 and intervenor in No. 80-1807 and 80-1808. Robert M. Baptiste and John E. Santucci, Jr., Washington, D. C., also entered an appearance for petitioner.
 Robert F. Gore, Springfield, Va., for petitioner in No. 80-1808 and Intervenor Larry Shepard in No. 80-1503.
 Robert B. Shanks, Washington, D. C., for California Dump Truck Owners Ass'n petitioner in No. 80-1807. William C. Bottger, Jr. and Robert V. Kuenzel, Los Angeles, Cal., were on the brief for California Dump Truck Owners Ass'n petitioner in No. 80-1807 and intervenor in No. 80-1503 and 80-1808.
 David S. Fishback, Atty., N. L. R. B., Washington, D. C., with whom Elliott Moore, Deputy Associate Gen. Counsel and Carol De Deo, Atty., N. L. R. B., Washington, D. C., were on the brief for respondent.
 Robert W. Bell, Jr., San Diego, Cal., Associated Gen. Contractors of America, et al., intervenor in Nos. 80-1503 and 80-1808. James K. Smith, San Diego, Cal., also entered an appearance for Associated Gen. Contractors of America, et al., intervenor in Nos. 80-1503 and 80-1808.
 Before McGOWAN and ROBB, Circuit Judges, and JAMESON*, United States Senior District Judge for the District of Montana.
 Opinion for the Court filed by Circuit Judge ROBB.
 ROBB, Circuit Judge:
 
 
 1
 These cases are here on petitions to review the order of the National Labor Relations Board in Building Material & Dump Truck Drivers, Teamsters Local Union No. 36, etc., 249 N.L.R.B. No. 38 (1980). The Board ordered the Building Material and Dump Truck Drivers, Teamsters Local Union No. 36 and the Associated General Contractors, San Diego Chapter, Inc., the San Diego Building Contractors Association, the Engineering and General Contractors Association, and their employer members (the Contractors) to cease enforcing certain provisions of a Master Labor Agreement entered into by the Union and the Contractors in 1977. The Board found that the 1977 Master Labor Agreement required signatory employers to cease dealing with non-union dump truck operators who are independent contractors, thus violating section 8(e) of the National Labor Relations Act. 29 U.S.C. § 158(e) (1976).[1]
 
 
 2
 The Union has petitioned for review of the Board's order, arguing that the Board erred in finding that the truck operators in question are independent contractors. The Associated General Contractors have intervened in support of the Board's order. The California Dump Truck Owners Association, an association of independent dump truck owner-operators, and Larry Shepard, an individual dump truck owner-operator, were charging parties before the Board. They have also petitioned for review, arguing that the remedy awarded by the Board is inadequate. We affirm the Board's order in all respects.
 
 
 3
 The dispute arises out of the building and construction industry in San Diego County, California. The practice in that industry is that building contractors hire dump truck operators on a day-to-day basis to haul materials to and from construction sites. The contractors generally obtain the services of dump truck operators through brokers, who refer hauling jobs to individual operators, handle billing for services rendered, and generally coordinate arrangements between the contractors and the truck operators. The brokers receive a commission based on the amount billed. Larry Shepard, one of the petitioners, is a dump truck owner-operator who generally accepts referrals from the Terra Trucking Company, one of the brokers in the San Diego area. Petitioner California Dump Truck Owners Association is composed of owner-operators who operate through brokers.
 
 
 4
 Since at least 1965 the Union and the Contractors have negotiated master labor agreements to govern hauling work performed in the San Diego area. There has been a dispute during that same period between the Union and the non-union truck operators over the availability of hauling jobs for non-union truck operators. The Union sought terms in each new agreement to prohibit dealings with non-union operators. The 1977 Master Labor Agreement contained such terms. Section 4 of the Agreement required signatory contractors to transport "all materials ... to or from or on the site of the work by workmen furnished by the appropriate craft UNION ...." Under section 42(B)(1) of the Agreement only union truck operators were cleared by the Union for work with the Contractors. The Agreement also provided that signatory contractors could procure the services of truck operators only through a "person, firm, or corporation ... signatory to an agreement with the Union". Section 42(B)(2). Other provisions of the Agreement required the Contractors to treat owner-operators as employees, section 42(B)(4), and penalized contractors who failed to comply with the Agreement. Section 42(B)(9)(12) & (13). In short, under the 1977 Agreement the Union enlisted the aid of the Contractors to insure that only signatory brokers received subcontracts and only union truck operators performed hauling services for building contractors in the San Diego area. The Board found that the Union and the Contractors enforced the Agreement against brokers and non-union dump truck operators.
 
 
 5
 In November 1977 the Kissinger Trucking Company, a broker, entered into a contract with the Penhaul Company to supply hauling services for a demolition project. Shortly after the project began, Kissinger's manager was informed that Kissinger would be replaced because it was referring non-union truck operators. Penhaul had signed the 1977 Agreement and could not, under the terms of that agreement, contract with a broker that referred non-union truck operators. Kissinger Trucking lost the contract with Penhaul and subsequently signed the 1977 Agreement.
 
 
 6
 The Agreement was also enforced against Terra Trucking, Larry Shepard's usual broker. Terra Trucking has been a party to master labor agreements since 1974, and so was required by the 1977 Agreement to refer only union truck operators to building contractors. In August 1978 Terra Trucking's president, Fred ReCupido, received a letter from the Union stating that under the Agreement he must not deal with seven non-union truck operators, including Shepard. ReCupido informed the seven truck operators that they must join the Union or make other arrangements for brokerage of their services. Shepard joined the Union under protest. Some of the seven non-union truck operators did not join the Union but continued to accept referrals from Terra Trucking.
 
 
 7
 In December 1977 the Dump Truck Owners filed a charge with the Board alleging that the Agreement violated section 8(e) of the Act. The charge alleged that the Union and the Contractors had agreed to cease, and had actually ceased, doing business with the non-union dump truck operators. In October 1978 Larry Shepard filed a similar charge against the Union, alleging that the Union had violated sections 8(b)(4)[2] and 8(e) of the Act by pressuring Terra Trucking not to broker his services because he did not belong to the Union notwithstanding that he is an independent contractor. At the request of the Regional Director, Shepard filed a new charge containing only the 8(e) allegation.
 
 
 8
 In January 1979 the Regional Director consolidated the two charges and issued a complaint alleging only a violation of section 8(e) by the Union and the Contractors. After a full trial the Administrative Law Judge found that the truck operators are independent contractors and not employees under the Act. Thus, the Union and the Contractors violated section 8(e) by agreeing not to do business with the non-union truck operators and their brokers. The ALJ recommended that the Board order the Union and the Contractors to cease and desist from enforcing the unlawful provisions of the Agreement. The ALJ further recommended that the Union and the Contractors be ordered to make whole those truck operators who were compelled to join the Union and pay dues, initiation fees, assessments, and contribute to Union trust funds.
 
 
 9
 On exceptions and briefs the Board affirmed the ALJ's findings and conclusions, as relevant here, but deleted the make-whole remedy recommended by the ALJ. The Board ordered the Union and the Contractors to cease enforcing the unlawful portions of the Agreement and to post notices. The Union, Mr. Shepard, and the Dump Truck Owners petition for review and the Board petitions for enforcement of its order.
 
 
 10
 The first question presented by the petitions for review is whether the Board correctly found that the Union and the Contractors violated section 8(e) of the Act by agreeing not to deal, and ceasing to deal, with certain brokers and non-union truck operators. Section 8(e) prohibits "any contract or agreement, express or implied, whereby such employer ceases or refrains or agrees to cease or refrain from handling, using, selling, transporting or otherwise dealing in any of the products of any other employer". 29 U.S.C. § 158(e) (1976).[3] This section of the Act has been interpreted by the Supreme Court to prohibit agreements calculated to satisfy "secondary" union objectives, i.e., those objectives which are not "addressed to the labor relations of the contracting employer vis-a-vis his own employees". National Woodwork Manufacturers Association v. NLRB, 386 U.S. 612, 644-45, 87 S.Ct. 1250, 1268-69, 18 L.Ed.2d 357 (1967). Agreements which limit the employer, here the Contractors, to subcontracting with businesses that recognize the union or have a union contract violate section 8(e). Truck Drivers, Local 413 v. NLRB, 118 U.S.App.D.C. 149, 158, 334 F.2d 539, 548 (1964). Thus, a provision in an agreement which is designed to compel independent contractors to become union members as a condition of doing business with a party to the agreement is unlawful because it restricts the employer in his dealings with other businesses. Local 814, International Brotherhood of Teamsters v. NLRB, 167 U.S.App.D.C. 387, 389-90, 512 F.2d 564, 566-67 (1975), cert. denied, 434 U.S. 818, 98 S.Ct. 56, 54 L.Ed.2d 73 (1977). It is not disputed that the Union and the Contractors may not lawfully enforce the provisions of the 1977 Agreement which restrict dealings with truck operators who are independent contractors. However, the Union contends that the Board erred in finding that the truck operators are independent contractors. The truck operators, says the Union, are employees of the brokers. We agree with the Board.
 
 
 11
 Section 2(3) of the Act, 29 U.S.C. § 152(3) (1976), defines "employee" as excluding "any individual having the status of an independent contractor". The Act does not define "independent contractor", but Congress intended the Board and the courts to "apply general agency principles in distinguishing between employees and independent contractors under the Act." NLRB v. United Insurance Co., 390 U.S. 254, 256, 88 S.Ct. 988, 989, 19 L.Ed.2d 1083 (1968) (footnote omitted). In applying agency principles the Board and the courts look at all aspects of an individual's relationship with the putative employer. Local 777, Democratic Union Organizing Committee, Seafarer's International Union v. NLRB, 195 U.S.App.D.C. 280, 290-91, 603 F.2d 862, 872-73 (1978). Although no one part of the relationship is determinative, the degree of supervision over the means and manner of performing the task assigned is most important in determining whether a relationship is that of employee or independent contractor. Associated General Contractors of California, Inc. v. NLRB, 564 F.2d 271, 279 (9th Cir. 1977); see Joint Council of Teamsters No. 42 v. NLRB, 146 U.S.App.D.C. 275, 279, 450 F.2d 1322, 1326 (1971). Under the familiar principles of agency law
 
 
 12
 an employer-employee relationship exists when the employer reserves not only the right to control the result to be achieved, but also the means to be used in attaining the result. On the other hand, where the employer has reserved only the right to control the ends to be achieved, an independent contractor relationship exists.
 
 
 13
 Seafarers International, supra, 195 U.S.App.D.C. at 290-91 n.24, 603 F.2d at 872-73 n.24, quoting Twin City Freight Inc., 221 N.L.R.B. 1219, 1220 (1975). Accord: City Cab Co. of Orlando, Inc. v. NLRB, 202 U.S.App.D.C. 261, 264, 628 F.2d 261, 264 (1980). It is the Board which determines independent contractor or employee status in the first instance and we must affirm the Board's determination if it is supported by the record as a whole. 29 U.S.C. § 160(e) (1976); Universal Camera Corp. v. NLRB, 340 U.S. 474, 487-88, 71 S.Ct. 456, 463-64, 95 L.Ed. 456 (1951).
 
 
 14
 Given these legal principles, our task is limited to determining whether the Board's finding that the truck operators are independent contractors is consistent with the statute and the record. The Board found that the truck operators are not supervised in any manner by the brokers, who simply refer hauling jobs to them. While on the job only the building contractor's personnel tell the truck operators where to deliver a load, and this is done by hand signals. The Board found that the truck operators may accept referrals from more than one broker and are free to negotiate a job rate that is higher than a minimum rate set by a state commission. The truck operators own their trucks, and arrange licensing, insurance, repairs and maintenance. They are responsible for operating expenses, may subcontract job referrals, are personally liable for spillage, pay Social Security taxes as self-employed persons, and often receive payment based on tonnage or mileage as opposed to hourly wages. As the Board concluded, it is fair to describe these truck operators as independent businessmen, free to decide when, whether, and how to work. This being so the Union may not lawfully compel them to become members in order to carry on their business.
 
 
 15
 The Union challenges the Board's conclusion by pointing to certain facts which are said to indicate a close working relationship between Terra Trucking, a broker, and some of the truck operators that accept referrals from Terra. Specifically, the Union notes that Terra Trucking (1) rents trailers to some truck operators, (2) requires five days notice before a truck operator may cease renting a trailer, (3) insures its rented trailers under a policy that includes a two-hundred-fifty dollar deductible clause, (4) makes fuel available for purchase by the operators, (5) performs all billing and collection services for the truck operators, (6) pays the truck operators each month whether or not the bills are collected and (7) the truck operators are told when and where to report to begin work.
 
 
 16
 We think these facts and others relied on by the Union do not compel a finding that the truck operators are employees under the Act. None of the facts relied on by the Union establishes that the truck operators have given brokers the right to control their work. Taken together, the facts indicate that some of the truck operators have a close working relationship with a broker. This suggests that the truck operators have contracted away some aspects of entrepreneurial freedom and that certain risks have been shifted to the brokers; but the record taken as a whole does not compel a conclusion that the truck operators have surrendered control over their operations to the brokers. On the contrary, the record fully supports the Board's conclusion that the truck operators are independent contractors. Because the truck operators are independent contractors, the Union and the Contractors may not enter into an agreement which prohibits dealings with them unless they become union members. The 1977 Agreement was thus invalid and the Board's order against its enforcement is proper.
 
 
 17
 We turn to the attack on the Board's remedy by Shepard and the dump truck operators. As we have said, the ALJ recommended that the Union and the Contractors be ordered to reimburse the dues, contributions and fees paid by those truck operators who joined the Union. The Board declined to adopt this recommendation. In a footnote to its decision, 248 N.L.R.B. No. 38 at 3 n.2, the Board said "we find that the reimbursement of owner-operators ordered by the Administrative Law Judge would not effectuate the remedial policies of the Act. See Local 60, United Brotherhood of Carpenters and Joiners of America, AFL-CIO, et al. (Mechanical Handling Systems, Inc.) v. NLRB, 365 U.S. 651, 81 S.Ct. 875, 6 L.Ed.2d 1 (1961)." The Board found "a reimbursement order, typically used to 'make whole' employees for violations of the Act, to be generally overbroad and inappropriate in the context of 8(e) violations." (Emphasis in original) Id. The Board entered a cease and desist order against the Union, combined with notice posting.
 
 
 18
 Shepard and the dump truck owners complain that the Board failed to give an adequate explanation of its deletion of the make-whole order and that the cease and desist order is insufficient as a matter of law. We think, however, that the Board's explanation is adequate, and that given our limited authority to disturb the Board's exercise of discretion in such matters we may not interfere.
 
 
 19
 Section 10(c) of the Act provides that, upon finding that an unfair labor practice has been committed, the Board "shall issue ... an order requiring ... such affirmative action ... as will effectuate the policies of this Act." 29 U.S.C. § 160(c). See also NLRB v. Seven-Up Bottling Co., 344 U.S. 344, 346, 73 S.Ct. 287, 288, 97 L.Ed. 377 (1953). The Board's remedial power "is a broad discretionary one, subject to limited judicial review". Fibreboard Paper Products Corp. v. NLRB, 379 U.S. 203, 216, 85 S.Ct. 398, 405, 13 L.Ed.2d 233 (1964). In fashioning its remedies, "the Board draws on a fund of knowledge and expertise all its own, and its choice of remedy must therefore be given special respect by reviewing courts." NLRB v. Gissell Packing Co., 395 U.S. 575, 612 n.32, 89 S.Ct. 1918, 1939 n.32, 23 L.Ed.2d 547 (1969). As this court has observed in reviewing a petitioner's contention that a Board remedy did not go far enough:
 
 
 20
 Just what remedies are necessary to insure that a decision and order of the Board is effective is a matter largely for the Board's discretion. To successfully attack the Board's remedy one must show that the remedies prescribed by the Board are clearly inadequate in the light of the findings of the Board.
 
 
 21
 I.U.E., Local 806 v. NLRB, 140 U.S.App.D.C. 199, 204, 434 F.2d 473, 478 (1970). Indeed, the Supreme Court has held that a Board remedial order may not be disturbed "unless it can be shown that the order is a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the Act." Virginia Electric & Power Co. v. NLRB, 319 U.S. 533, 540, 63 S.Ct. 1214, 1218, 87 L.Ed. 1568 (1943).
 
 
 22
 Section 8(e) of the Act makes it an unfair labor practice "for any labor organization and any employer to enter into any contract or agreement, express or implied, whereby" an employer agrees not to handle products of, or agrees to cease doing business with, any other person. Such contracts or agreements, with certain exceptions not germane here, are unlawful per se ; evidence of coercion is not necessary to prove a violation of the Section. In the absence of coercion and because union members receive benefits as well as assume burdens, the Board properly finds it inappropriate to order reimbursement of sums paid pursuant to agreements that violate section 8(e); obviously, reimbursement to union members who were not coerced into joining would result in an unjust windfall to them. It was for this reason that the Supreme Court, in the case cited by the Board, Local 60, United Bhd. of Carpenters and Joiners v. NLRB, 365 U.S. 651, 81 S.Ct. 875, 6 L.Ed.2d 1 (1961), held that the Board was not authorized to require the union to refund dues and fees when there was no evidence that any of the employees had been coerced.
 
 
 23
 Section 8(b)(4)(ii)(A) of the Act provides that it is unlawful for a union to engage in certain conduct if the object thereof is to force or require any employer or self-employed person to join any labor organization or to enter into any agreement prohibited by section 8(e). The Board has properly ordered make-whole remedies where employers or self-employed persons have been subjected to violations of this section. See Local 814, Teamsters (Santini Bros.), 208 N.L.R.B. 184, 201 (1974), enfc'd, 178 U.S.App.D.C. 223, 546 F.2d 989 (1976), cert. denied, 434 U.S. 818, 98 S.Ct. 56, 54 L.Ed.2d 73 (1977); Sheet Metal Workers, Local 223, 196 N.L.R.B. 55, 57 (1972), remanded, 162 U.S.App.D.C. 145, 498 F.2d 687 (1974), modified, 214 N.L.R.B. 786 (1974). In the case before us, however, no violation of section 8(b)(4)(ii)(A) was alleged. The Supreme Court has held that a make-whole order "in those circumstances become punitive and beyond the power of the Board." Carpenters Local 60, supra, 365 U.S. at 655, 81 S.Ct. at 877. The petitioners suggest that the Board should have made a sua sponte finding of section 8(b)(4)(ii)(A) violations; but since no such violation was charged a sua sponte finding would have been improper.
 
 
 24
 We think the Board's explanation of its order, although terse, is a sufficient shorthand indication of its reasoning. Finally, we cannot say that the cease and desist order entered by the Board is insufficient to deter further wrongdoing. Both the unions and the contractors' associations will be subject to contempt proceedings for any future violations. We will not disturb the Board's judgment that the order is sufficient to effectuate the policies of the Act.
 
 
 25
 The petitions for review are denied and the Board's order will be enforced in full.
 
 
 26
 So ordered.
 
 
 
 *
 Sitting by designation pursuant to 28 U.S.C. § 294(d)
 
 
 [1]
 Section 8(e) provides that:
 It shall be an unfair labor practice for any labor organization and any employer to enter into any contract or agreement, express or implied, whereby such employer ceases or refrains or agrees to cease or refrain from handling, using, selling, transporting or otherwise dealing in any of the products of any other employer, or to cease doing business with any other person, and any contract or agreement entered into heretofore or hereafter containing such an agreement shall be to such extent unenforcible and void: Provided, That nothing in this subsection shall apply to an agreement between a labor organization and an employer in the construction industry relating to the contracting or subcontracting of work to be done at the site of the construction, alteration, painting, or repair of a building, structure, or other work: Provided further, That for the purposes of this subsection and subsection (b)(4)(B) of this section the terms "any employer", "any person engaged in commerce or an industry affecting commerce", and "any person" when used in relation to the terms "any other producer, processor, or manufacturer", "any other employer", or "any other person" shall not include persons in the relation of a jobber, manufacturer, contractor, or subcontractor working on the goods or premises of the jobber or manufacturer or performing parts of an integrated process of production in the apparel and clothing industry: Provided further, That nothing in this subchapter shall prohibit the enforcement of any agreement which is within the foregoing exception.
 
 
 [2]
 Section 8(b) provides that
 It shall be an unfair labor practice for a labor organization or its agents-
 (4)(i) to engage in, or to induce or encourage any individual employed by any person engaged in commerce or in an industry affecting commerce to engage in, a strike or a refusal in the course of his employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services; or (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is-
 (A) forcing or requiring any employer or selfemployed person to join any labor or employer organization or to enter into any agreement which is prohibited by subsection (e) of this section;
 (B) forcing or requiring any person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person, or forcing or requiring any other employer to recognize or bargain with a labor organization as the representative of his employees unless such labor organization has been certified as the representative of such employees under the provisions of section 159 of this title: Provided, That nothing contained in this clause (B) shall be construed to make unlawful, where not otherwise unlawful, any primary strike or primary picketing;
 29 U.S.C. § 158(b) (1976).
 
 
 [3]
 Section 8(e) also contains a proviso excepting from its coverage all work performed on a construction job site. That proviso is not at issue in these cases