Maurine M. HOLT, Appellant,

v.

William W. WINPISINGER, et al.

No. 85–5353.

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 6, 1986.
Decided Feb. 13, 1987.

Robert L. Liebross, with whom Karen W. Ferguson, Washington, D.C., and Sarah D. Galbraith, were on the brief, for appellant.

**1.** Pub.L. No. 93–406, 88 Stat. 829 (1974) (codified at 29 U.S.C. §§ 1001–1461 (1982) and scattered sections of 26 U.S.C.).

James S. Ray, Washington, D.C., for appellees.

Before ROBINSON, MIKVA and GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge ROBINSON.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

Maurine M. Holt appeals from a judgment of the District Court upholding a determination of the Administrators of the International Association of Machinists' (IAM) pension plan that she was not eligible for a pension upon cessation of her employment with IAM. Appellant challenges the conclusion, reached successively by the Administrators and the court, that the right to a pension did not vest because she was not an "employee" during the first of her approximately ten years of service. We find that the District Court misinterpreted the meaning and significance of "employee" status under the Employee Retirement Income Security Act (ERISA)[1] and misapplied the criteria for ascertaining its existence. Accordingly, we reverse the judgment under review and remand for further proceedings.

## I. BACKGROUND

On October 29, 1973, after a 20–year absence from the labor force while raising a family, appellant began work for IAM as a part-time assistant to Gordon D. English, the manager of IAM's DuPont Circle Building. Her duties were of a general clerical nature, including such tasks as typing leases, answering tenants' telephone calls, filing, bookkeeping, and preparing forms for new employees. English trained her in the use of office machines, supervised her work on a daily basis, and could have fired her if he found fault with her work.[2]

**2.** Trial Transcript (Tr.) 29–32, 36, 142, 285–289, *reprinted in part in* Appendix for Appellant (A. App.) 39–42, 46, 59, 72–76; tr. 63, 67–68.

In obtaining this position, appellant was assisted by her husband, Milo O. Holt, who was the Assistant Secretary of IAM.[3] At the time, Milo Holt informed English that IAM had a policy against hiring part-time employees, and directed English not to put appellant on the payroll but to provide for her compensation from a general fund which was used to pay for outside services by independent contractors.[4] As a result, appellant was paid by the hour and did not reap the benefits of salaried employees. She had no paid vacation or sick leave, and no insurance or Railroad Retirement benefits. Additionally, IAM did not withhold income or Social Security taxes from her paychecks, as it did with respect to employees on salary.[5] The District Court found that this arrangement was designed to circumvent IAM's policy against part-time employment.[6]

Almost a year later, on September 2, 1974, English hired appellant on a full-time basis, putting her on the payroll with the title of office manager.[7] Her hours increased from approximately 20–25 to 35 per week.[8] She received a weekly salary instead of hourly pay, and became eligible for paid holidays and sick leave.[9] She filled out forms for withholding of taxes, and became entitled to Railroad Retirement, health and life insurance benefits.

No forms were necessary to trigger participation in the pension plan; the memorandum placing her on the payroll characterized her as a new employee, and the financial officer calculated her pension credits from that date.[10] Notwithstanding these changes, however, appellant's duties remained the same. She still performed the same general clerical tasks and reported daily to English, who continued to supervise her work.[11]

Appellant continued to work as office manager of the DuPont Circle Building until May 25, 1983, when IAM informed her that she would be released on July 1 as part of a general layoff to reduce costs.[12] She inquired of an employee in IAM's pension department as to whether she would be eligible for a pension, which, under IAM's plan, vests after an employee completes ten years of service. The Administrators of the plan informed her that she did not qualify for a pension because her date of hire by IAM was September 2, 1974, and that she therefore lacked one year of the ten years necessary for vesting of her pension.[13] The Administrators predicated their determination on the ground that she was not an "employee" during the period of her part-time service from October, 1973, to September, 1974.[14]

3. Tr. 25–26.

4. Tr. 73–76.

5. Tr. 33–34, A. App. 43–44; Tr. 59–61, 64–65.

6. *Holt v. Winpisinger,* Civ. No. 83–1887 (D.D.C. Mar. 5, 1983) (memorandum opinion) [hereinafter cited as *Memorandum Opinion* ] at 4–5, *reprinted in* A. App. 4–5. The court also found that the arrangement may have been intended to sidestep what the court characterized as "at least the semblance of a policy, albeit an unwritten one," against hiring relatives of IAM officials and employees. *Id.* at 7, A. App. 7. The court felt, however, that an anti-nepotism rule would not have presented a major obstacle to appellant's employment, and acknowledged that "[w]hether the policy was well-known and/or strictly enforced is unclear." *Id.,* A. App. 7.

7. *Id.* at 8, A. App. 8.

8. Tr. 36, A. App. 46.

9. *Memorandum Opinion, supra* note 6, at 9, A. App. 9.

10. *Id.* at 9–10, A. App. 9–10.

11. Tr. 36, A. App. 46.

12. Letter from Eugene D. Glover, General Secretary-Treasurer, IAM, to Maurine M. Holt (May 25, 1983), Exhibit D to Memorandum of Points and Authorities in Support of Motion for Temporary Restraining Order, *Holt v. Winpisinger,* Civ. No. 83–1887 (D.D.C.) (filed June 30, 1983), Record Document (R. Doc.) 2.

13. Letter from Eugene D. Glover to Maurine M. Holt (May 19, 1983), *reprinted in* A. App. 22.

14. Letter from Eugene D. Glover to Maurine M. Holt (June 22, 1983), *reprinted in* A. App. 24. The parties agree that the nine and three-quarters years that appellant worked for IAM would satisfy the pension plan's ten-year vesting period if she were considered an employee during the 1973–74 period of part-time employment.

Appellant then filed suit in the District Court against IAM and the plan's Administrators, claiming that their decision to deny her a pension violated her rights under ERISA.[15] She challenged the Administrators' position that she was hired as a contractor and not as an "employee," as that term is defined by ERISA, for purposes of ascertaining whether she had completed the ten years of service needed for vesting of her pension.[16] After a bench trial, the District Court, "look[ing] to common law principles and the intent of the parties," [17] concluded that even though "[c]ustomarily, an office manager receiving on-the-job supervision while working somewhat regular hours does not serve as an independent contractor," in this case "custom was deliberately defied.... [A]ll parties involved, and particularly plaintiff, stood to gain from a relationship in which plaintiff served on a contract basis." [18] The court then held that "defendants correctly decided that plaintiff's coverage under the IAM Pension Plan, like all other fringe benefits of IAM employment, commenced when plaintiff joined the payroll on September 2, 1974. As defendants' decision was neither arbitrary nor capricious and is supported by substantial evidence, it shall not be overturned." [19]

On appeal, all parties agree that common-law principles of agency govern in determinations on employee status,[20] but they differ on proper application of those standards. Appellant asserts that her working relationship with English, who supervised every aspect of her work, is decisive, and establishes that she served as an employee, and not as an independent contractor, during the period of part-time service.[21] The Administrators insist that the parties' intent controls, and that everyone familiar with appellant's employment understood that she was engaged on a contract basis, and not as an employee, in order to avoid IAM's policies against hiring part-time employees or relatives.[22] From this premise, the Administrators argue that we are required to uphold their eligibility ruling as a determination supported by substantial evidence and not arbitrary,[23] and that, regardless of appellant's employment status, equitable principles should bar her claim.[24]

## II. THE STANDARD OF REVIEW

Almost a quarter-century ago, in *Danti v. Lewis*,[25] this court articulated the traditional standard for review of eligibility decisions of those who administer employee pension plans. We said that "the Trustees['] ... decision as to eligibility is subject to judicial review to determine whether the trustees have acted arbitrarily, capriciously or in bad faith; that is, is the decision of the Trustees supported by substantial evidence or have they made an erroneous decision on a question of law." [26] Courts have generally adopted this standard,[27] and will uphold factual determinations on eligibility

*Memorandum Opinion, supra* note 6, at 2 n. 2, A. App. 2.

**15.** Complaint ¶ 20, *Holt v. Winpisinger,* Civ. No. 83–1887 (D.D.C.) (filed June 30, 1983), R. Doc. 1. Six additional counts of the complaint were dismissed before trial and are not before us on appeal.

**16.** See *Memorandum Opinion, supra* note 6, at 2–3, A. App. 2–3.

**17.** *Id.* at 13, A. App. 13.

**18.** *Id.* at 14, A. App. 14.

**19.** *Id.* at 16, A. App. 16.

**20.** Brief for Appellant at 16–26; Brief for Appellees at 19 n. 4. The cases generally agree. See note 44 *infra.*

**21.** Brief for Appellant at 27–30.

**22.** Brief for Appellees at 17–27.

**23.** Brief for Appellees at 16.

**24.** Brief for Appellees at 27–34.

**25.** 114 U.S.App.D.C. 105, 312 F.2d 345 (1962).

**26.** *Id.* at 108, 312 F.2d at 348 (footnote omitted).

**27.** See, e.g., *Riley v. MEBA Pension Trust,* 570 F.2d 406, 410 (2d Cir.1977); *LeFebre v. Westinghouse Elec. Corp.,* 747 F.2d 197, 204 (4th Cir. 1984); *Wardle v. Central States, S.E. & S.W. Areas Pension Fund,* 627 F.2d 820, 824 (7th Cir. 1980), *cert. denied,* 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981); *Short v. Central States, S.E. & S.W. Areas Pension Fund,* 729 F.2d 567,

when they rest on substantial record evidence and are not arbitrary.[28] Trustee rulings on questions of law do not command this high degree of respect, however, and may be overturned if erroneous.[29] The question whether an individual is an employee or an independent contractor, involving as it does both an interpretation of a statute—ERISA—and an application of common-law principles of agency, is a question of law.[30] We owe no more deference to the District Court when deciding questions of law than that court owed to the plan's Administrators.[31]

## III. THE STATUTORY FRAMEWORK

To fully understand appellant's claim, one must distinguish the "vesting" of pension rights from the "accrued benefits" that flow from participation in a pension plan. As we have hitherto explained,

> [t]he "vesting schedule" specifies the time at which an employee obtains his nonforfeitable right to a particular percentage of his accrued benefit. *It does not provide any formula or schedule for determining the amount of the accrued benefit.* Thus, "vesting" governs when an employee has a *right* to a pension; "accrued benefit" is used in calculating the *amount* of the benefit to which the employee is entitled.[32]

■ One of ERISA's principal aims in reforming the Nation's employee pension plans was to establish vesting ceilings so

---

571 (8th Cir.1984); *Rehmar v. Smith,* 555 F.2d 1362, 1371 (9th Cir.1977); *Carter v. Central States, S.E. & S.W. Areas Pension Plan,* 656 F.2d 575, 576 (10th Cir.1981).

**28.** *Maggard v. O'Connell,* 217 U.S.App.D.C. 62, 64–65, 671 F.2d 568, 570–71 (1982); *Danti v. Lewis, supra* note 25, 114 U.S.App.D.C. at 108, 312 F.2d at 348; *Short v. Central States, S.W. & S.E. Areas Pension Fund, supra* note 27, 729 F.2d at 571.

**29.** *Democratic Union Org. Comm. v. NLRB,* 195 U.S.App.D.C. 280, 290, 603 F.2d 862, 872 (1978) ("[s]ince the problem is essentially the interpretation of the common law in which the courts themselves are expert, we need not accord the Board's decision that special credence which we normally show merely because it represents the agency's considered judgment") (citations omitted); *Riley v. MEBA Pension Trust, supra* note 27, 570 F.2d at 410 ("[w]ith respect to § 203(a)(3)(B)(ii) [of ERISA], however, the question . . . is what Congress meant, not what the Plan meant, and we must treat this as we would any other question of statutory construction"); *Quinn v. Burlington N. Inc., Pension Plan,* 664 F.2d 675, 678 (8th Cir.1981), *cert. denied,* 456 U.S. 928, 102 S.Ct. 1976, 72 L.Ed.2d 444 (1982) ("where the trustee is actually interpreting statutory law the 'arbitrary, capricious, or abuse of discretion' standard of review is inapplicable").

**30.** *Democratic Union Org. Comm. v. NLRB, supra* note 29, 195 U.S.App.D.C. at 324, 603 F.2d at 906 (whether a person is an employee is a legal conclusion to be drawn from the facts); *Trailways Lines, Inc. v. Trailways, Inc. Joint Council of the Amalgamated Transit Union,* 785 F.2d 101, 106 (3d Cir.), *cert. denied,* — U.S. —, 107 S.Ct. 403, 93 L.Ed.2d 356 (1986) ("the issue of the status of employees is not solely a question of contract. Rather, it is a question of law turning also on the degree of control exercised by the employer over the employee"); *Short v. Central States S.E. & S.W. Areas Pension Fund, supra* note 27, 729 F.2d at 571 (whether individual is employee or independent contractor is a question of law). Appellees' reliance on *Maggard v. O'Connell, supra* note 28, is misplaced. They argue that *Maggard's* articulation of the traditional rule—"that decisions of the trustees on pension eligibility are to be sustained by courts if they are not arbitrary or capricious, and if the trustees' factual judgments are supported by substantial evidence in the record as a whole," 217 U.S.App.D.C. at 64–65, 671 F.2d at 570–71—should be applied in this case to the Administrators' determination that appellant was not an employee during her first year of service. Brief for Appellees at 16–17. In *Maggard,* however, the eligibility determination turned on a purely factual inquiry as to whether the claimant's decedent had been working as a miner during a particular period of time to satisfy the pension plan's 20–year vesting requirement. *Maggard v. O'Connell, supra* note 28, 217 U.S.App.D.C. at 67–70, 671 F.2d at 573–76.

**31.** When a determination of employee status entails resolution of a factual dispute, we would defer to the managers' findings of the facts underlying the employment relationship if they are supported by substantial evidence and are neither arbitrary nor capricious. But the legal significance of those facts—whether, as found, they establish an employee or a contractor relationship—is a question of law.

**32.** *Stewart v. National Shopmen Pension Fund,* 235 U.S.App.D.C. 122, 132, 730 F.2d 1552, 1562, *cert. denied,* 469 U.S. 834, 105 S.Ct. 127, 83 L.Ed.2d 68 (1984) (emphasis in the original).

that employees with lengthy service would no longer lose accrued benefits simply because their employment terminated before they became eligible to retire.[33] ERISA protects the right to obtain a pension by requiring plans to satisfy specified vesting requirements, but does not guarantee the amount of pension benefits that an employee will receive.

IAM's pension plan, like the great majority of private pension plans,[34] provides that an employee's right to a pension vests upon completion of ten years of service, regardless of whether the employment terminates before the employee reaches retirement age.[35] Once an employee participates in a pension plan, all of his or her years of service, whether completed before or after participation begins, count statutorily toward the ten years of vesting credit essential.[36]

█ As this brief analysis indicates, vesting is tied to length of employment, but the amount of accrued benefits depends upon participation in the plan. One conceivably can earn credit toward vesting without accumulating any pension benefits, and that is precisely appellant's claim. She seeks vesting credit, but no accrued bene-

fits, for her first year of service to IAM. She asserts that she was an employee during that year and that once she began participating in IAM's pension plan—when she became a full-time employee in September, 1974—her first year of service should count toward the ten years necessary for her pension right to vest. She does not contend that she participated in the pension plan during the first year, and thus does not seek accrued benefits for that period.[37]

The District Court seemingly failed to distinguish vesting from accrued benefits. Initially, the court accurately identified the problem, stating that "[a]t issue in this case is the determination of the Plan ... that plaintiff's rights did not vest because she did not attain the minimum ten years of service as an IAM employee required for vesting under the Plan.[38] Later in its opinion, however, the court declared that "[t]he legal issue presented here may be simply stated: was the Plan administrators' determination—that prior to September 2, 1974, *plaintiff was not a participant in the Pension Plan*—based on substantial evidence and not arbitrary or capricious?" [39] Still later, the court rejected appellant's position, holding that the Administrators

---

**33.** See Pub.L. No. 93–406, tit. I, § 2(a), 88 Stat. 832 (1974) (codified at 29 U.S.C. § 1001(a) (1982)) ("despite the enormous growth in [employee benefit] plans many employees with long years of employment are losing anticipated retirement benefits owing to the lack of vesting provisions in such plans"); 119 Cong.Rec. 30004 (1973) (statement of Sen. Williams, principal sponsor of ERISA) ("[w]ithout vested rights, should employment terminate prior to the time when he is eligible for retirement, a worker would be entitled to no benefits whatsoever despite many long and loyal years of service"); see also *Rettig v. Pension Benefit Guar. Corp.*, 240 U.S.App.D.C. 118, 121, 744 F.2d 133, 136 (1984) ("[o]ne of the serious shortcomings Congress identified in private pension plans was their failure to provide for vesting of accrued benefits before the time of actual retirement").

**34.** See *Rettig v. Pension Benefit Guar. Corp.*, supra note 33, 240 U.S.App.D.C. at 121 n. 4, 744 F.2d at 136 n. 4.

**35.** IAM's plan offers a vested deferred pension in accordance with ERISA's vesting requirements. The plan provides:

A [plan] Participant shall be eligible for a Vested Deferred Pension payable on or after age 55, if he or she after attaining 10 or more years of Vesting Service on or after January 1, 1976, terminates or is terminated from employment covered by this pension plan prior to age 55.

Constitution of International Association of Machinists and Aerospace Workers, art. XIV, § 5, ¶ 4, *reprinted in* A. App. 29.

**36.** H.R. Conf. Rep. No. 1280, 93rd Cong., 2d Sess. 268 (1974), *reprinted in* [1974] U.S.Code Cong. & Ad.News 5038, 5050 ("[g]enerally, ... once an employee becomes eligible to participate in a pension plan, all his years of service with an employer (including pre-participation service, and service performed before the effective date of the Act) are to be taken into account for purposes of determining his place on the vesting schedule").

**37.** Brief for Appellant at 15–16.

**38.** *Memorandum Opinion, supra* note 6, at 2, A. App. 2.

**39.** *Id.* at 12, A. App. 12 (emphasis supplied).

"correctly decided that *plaintiff's coverage under the IAM Pension Plan,* like all other fringe benefits of IAM employment, commenced when plaintiff joined the payroll on September 2, 1974." [40] Contrary to what appears to have been the District Court's understanding, however, success or failure of appellant's suit turns upon her employment status, not on her participation in the plan, during her first year of service, and the Administrators' determination on that score does not enjoy the deference afforded by the arbitrary-or-capricious standard of review.

## IV. THE EMPLOYMENT RELATIONSHIP

■ ERISA defines "employee" merely as "any individual employed by an employer." [41] The statutory definition thus provides little or no guidance when the question is whether a party performing services pursuant to a particular work arrangement is an employee. However, both parties agree [42] and the District Court held [43] that one must look to common-law rules of

agency to determine employee status. In this approach we fully concur. [44]

The District Court embarked upon its analysis by announcing that it "must look to common law principles and the intent of the parties." [45] Yet the court never enunciated the common-law test but instead focused exclusively upon intent, concluding that

all involved in establishing plaintiff's relationship with the IAM, including plaintiff, intended that she be retained on a contract basis, not as an employee earning pension credit. Customarily, an office manager receiving on-the-job supervision while working somewhat regular hours does not serve as an independent contractor. Here, however, custom was deliberately defied. In this case, all parties involved, and particularly plaintiff, stood to gain from a relationship in which plaintiff served on a contract basis. [46]

■ Intent of the parties is a factor, but merely one of a number of factors, that the common law weighs in distinguishing an employee from an independent contrac-

**40.** *Id.* at 16, A. App. 16 (emphasis supplied).

**41.** 29 U.S.C. § 1002(6) (1982).

**42.** Brief for Appellant at 16–26; Brief for Appellees at 19 n. 4.

**43.** *Memorandum Opinion, supra* note 6, at 13, A. App. 13.

**44.** The absence of a comprehensive definition of "employee" in ERISA and other features of that legislation indicate plainly enough that Congress intended the Secretary of the Treasury and the Secretary of Labor, who were administrators of various ERISA provisions, to continue their practice of defining "employee" in terms of common-law agency principles. See *NLRB v. United Ins. Co.,* 390 U.S. 254, 256, 88 S.Ct. 988, 989–90, 19 L.Ed.2d 1083, 1086 (1968) (Congress intended common-law agency principles to apply when the effort is to distinguish employees from independent contractors under the National Labor Relations Act); *Building Material & Dump Truck Drivers Union v. NLRB,* 215 U.S. App.D.C. 373, 378, 669 F.2d 759, 764 (1981), *aff'd sub nom, Shepard v. NLRB,* 459 U.S. 344, 103 S.Ct. 665, 74 L.Ed.2d 523 (1983) (same). Regulations issued by the Secretary of the Treasury to implement the vesting provisions of 26

U.S.C. § 411 (1982) also apply to minimum vesting under ERISA, 29 U.S.C. § 1202(c) (1982); H.R.Conf.Rep. No. 93–1280, *supra* note 36, at 268 n. 1, *reprinted in* [1974] U.S.Code Cong. & Ad.News 5050 n. 1. Under those Treasury regulations, "employee" is defined in terms of the common law. 26 C.F.R. § 31.3121(d)–1(c)(1) (1986) ("[e]very individual is an employee if under the usual common law rules the relationship between him and the person for whom he performs services is the legal relationship of employer and employee"). By 29 U.S.C. § 1202(c) (1982), the Secretary of Labor is forbidden to adopt or apply the vesting regulations in a manner inconsistent with the Internal Revenue Code, but this prohibition does not alter the interpretation of "employee" under federal labor law, which follows the common law. See *Democratic Union Org. Comm. v. NLRB, supra* note 29, 195 U.S.App.D.C. at 290, 603 F.2d at 872 (National Labor Relations Board has adopted the common law right-of-control test to differentiate employees and independent contractors).

**45.** *Memorandum Opinion, supra* note 6, at 13, A. App. 13.

**46.** *Id.* at 14, A. App. 14 (citation omitted).

tor.[47] The simple fact that IAM characterized appellant as a contractor did not make her one in the eyes of the law.[48] Rather, the right of one party to control not only the result to be achieved by the other, but also the means and manner of performing the task assigned, is the most critical factor in ascertaining whether an employment relationship exists.[49] Consequently, while all relevant circumstances are to be examined and evaluated, the degree to which English, appellant's supervisor, controlled her daily work activities is the primary consideration in determining her employment status.

▪ Although the District Court made no findings in this regard, the uncontradicted record evidence shows that English exercised well-nigh unbridled control over appellant's work and the details of its per-

formance. Eugene D. Glover, IAM's General Secretary-Treasurer and one of the pension plan's Administrators, testified that "Mr. English supervised her work, he trained her, he told her what to do," and he could have fired her if she disregarded his directions.[50] Both English and appellant testified that he set out her daily routine, told her what tasks needed to be done, trained her to use office equipment, and taught her to perform many clerical tasks such as bookkeeping, typing up leases and updating the building directory.[51] English likewise admitted that he could have discharged appellant at any time had he been displeased with her work.[52] This testimony amply demonstrates that English possessed and exercised the right to control not only the final products of appellant's labor, but also the manner in which she achieved the

**47.** *Spirides v. Reinhardt,* 198 U.S.App.D.C. 93, 99, 613 F.2d 826, 832 (1979) (intention of parties is one of twelve common-law agency factors); *Democratic Union Org. Comm. v. NLRB, supra* note 29, 195 U.S.App.D.C. at 299 n. 51, 603 F.2d at 881 n. 51 ("intent of the parties is not completely dispositive of the question of whether a relationship is one of employment or of independent contracting").

**48.** *Ward v. Atlantic Coast Line R.R.,* 362 U.S. 396, 400, 80 S.Ct. 789, 792, 4 L.Ed.2d 820, 823 (1960) ("neither the railroad's communication of its concept of petitioner's status to petitioner, nor his acquiecence therein, if shown, is determinative of the issue. The parties' characterization is but one factor to be considered among others") (citations omitted); *In re Shulman Transp. Enters., Inc.,* 744 F.2d 293, 295 (2d Cir. 1984) ("employee does not become an independent contractor simply because a contract describes him as such"); see also 26 C.F.R. § 31.3121(d)–1(a)(3) (1986) ("[i]f the relationship of employer and employee exists, the designation or description of the relationship by the parties as anything other than that of employer and employee is immaterial. Thus, if such relationship exists, it is of no consequence that the employee is designated as a[n] ... independent contractor"); Restatement (Second) of Agency § 220 comment m (1958) ("[i]t is not determinative that the parties believe or disbelieve that the relation of master and servant exists, except insofar as such belief indicates an assumption of control by the one and submission to control by the other").

**49.** *Building Material & Dump Truck Drivers Union v. NLRB, supra* note 44, 215 U.S.App.D.C. at 378, 669 F.2d at 764 (degree of supervision over

means and manner of performance is most important factor); *Spirides v. Reinhardt, supra* note 47, 198 U.S.App.D.C. at 98, 613 F.2d at 831 (most important factor is employer's right to control both the details of the worker's performance and the result to be achieved thereby); *Democratic Union Org. Comm. v. NLRB, supra* note 29, 195 U.S.App.D.C. at 292, 603 F.2d at 874 (fundamental question is whether putative employer has right to control details as well as result of . worker's performance); *American Fed'n of Gov't Employees v. Webb,* 188 U.S.App. D.C. 233, 241–42, 580 F.2d 496, 504–05, *cert. denied,* 439 U.S. 927, 99 S.Ct. 311, 58 L.Ed.2d 319 (1978) (degree of control or supervision is principal element differentiating employees and independent contractors at common law); Restatement (Second) of Agency § 220(1) (1958) (defining employee as "a person employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control"); see also 26 C.F.R. § 31.3121(d)–1(c)(2) (1986) (generally an employment "relationship exists when the person for whom services are performed has the right to control and direct the individual who performs the services, not only as to the result to be accomplished by the work but also as to the details and means by which that result is accomplished").

**50.** Tr. 142 (testimony of Eugene D. Glover).

**51.** Tr. 30–32, A. App. 40–42 (testimony of Maurine M. Holt); Tr. 286, 292–294, A. App. 73, 79–81 (testimony of Gordon D. English).

**52.** Tr. 318 (testimony of Gordon D. English).

results expected. Even the District Court felt constrained to observe that "[c]ustomarily, an office manager receiving on-the-job supervision while working somewhat regular hours does not serve as an independent contractor."[53]

Although, in the circumstances here, the right-to-control test alone might be dispositive of the issue, other common-law factors[54] support our conclusion that appellant was an employee, not an independent contractor, during her first year of service to IAM. From aught that appears, she did not render that service as a self-employed individual or affiliate of a business distinct from IAM.[55] Her work was integrally related to the branch of IAM's business concerned with management of the DuPont Circle Building.[56] So far as we know, the job she held during this era—clerical assistant—is rarely an unsupervised position; indeed, we know that in this case English provided constant direction and oversight.[57]

Performance of appellant's duties did not call for the sort of specialized skill for which employers would normally hire independent contractors.[58] She did not supply her own equipment; rather, she worked in English's office and used IAM's typewriters, calculators, and various other machines and office supplies.[59] Although she was paid by the hour, and received neither the level salary nor employee benefits enjoyed by other IAM workers, her compensation did not depend on completion of a specific job, a method by which independent contractors are often compensated.[60] While this financial arrangement does suggest that, for purposes of compensation, IAM handled appellant's situation in a manner different from those of other workers, this singular treatment did not extend to other aspects of the employment relationship, the most important of which for present purposes was control over the details of her performance.[61] We hold that,

---

**53.** *Memorandum Opinion, supra* note 6, at 14, A. App. 14.

**54.** Restatement (Second) of Agency § 220(2) (1958) lists ten factors helpful in differentiating between an employee and an independent contractor:

(a) the extent of control which, by the agreement, the master may exercise over the details of the work;

(b) whether or not the one employed is engaged in a distinct occupation or business;

(c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;

(d) the skill required in the particular occupation;

(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

(f) the length of time for which the person is employed;

(g) the method of payment, whether by the time or by the job;

(h) whether or not the work is a part of the regular business of the employer;

(i) whether or not the parties believe they are creating the relation of master and servant; and

(j) whether the principal is or is not in business.

*Id.* This court has utilized these criteria in assessing the significance of an employment relationship. See, e.g., *Spirides v. Reinhardt, supra* note 47, 198 U.S.App.D.C. at 99, 613 F.2d at ·

832 (enumerating factors); *Democratic Union Org. Comm. v. NLRB, supra* note 29, 195 U.S. App.D.C. at 292 n. 31, 603 F.2d at 874 n. 31 (same).

**55.** See Restatement (Second) of Agency § 220(2)(b) (1958), quoted in full *supra* note 54.

**56.** See *id.* § 220(2)(h), (j), quoted in full *supra* note 54.

**57.** See *id.* § 220(2)(c), quoted in full *supra* note 54.

**58.** See *id.* § 220(2)(d), quoted in full *supra* note 54. English testified that "[i]f something is beyond the scope of people [employed by IAM] to do, we contract the work out." Tr. 284, A. App. 71 (testimony of Gordon D. English).

**59.** Tr. 293, A. App. 80 (testimony of Gordon D. English); see Restatement (Second) of Agency § 220(2)(e) (1958), quoted in full *supra* note 54.

**60.** See Restatement (Second) of Agency § 220(2)(g) (1958), quoted in full *supra* note 54.

**61.** Cf. *id.* § 220 comment m ("[i]t is not determinative that the parties believe or disbelieve that the relation of master and servant exists, except insofar as such belief indicates an assumption of control by the one and submission to control by the other").

as a matter of law, appellant worked as an employee during the first year of her service to IAM.

## V. EQUITABLE DEFENSES

The Administrators insist that even if appellant was an employee during the period in question, she is barred by the equitable principles of waiver, estoppel, laches and unclean hands from asserting her claim for pension benefits.[62] We disagree on each of these counts.

 First we reject the Administrators' argument that appellant waived the right she now asserts when she accepted the position as an hourly worker entitled to none of the fringe benefits other IAM employees enjoyed. Appellant is not asking for accrued pension benefits for the first year; indeed, she admits that she was not then a participant in the pension plan.[63] To be sure, she claims vesting credit for that year as an employee of IAM, but the right thereto, if any, does not arise from the contract between the parties but rather is derived from ERISA,[64] and cannot be waived by a contract of employment.[65] To allow employees to contract away ERISA's vesting provisions would frustrate the purpose of the statute, which was enacted to protect employees from just such unfair deprivations of pension benefits. Moreover, the Supreme Court has held that ERISA's vesting rights are nonforfeitable once the requirements for vesting are satisfied.[66] Since appellant has overcome the only obstacle to statutory vesting of her pension right, her entitlement cannot be abridged.[67]

 IAM's remaining equitable defenses need not detain us long. The Administrators' contention that appellant's claim is barred by estoppel fails for lack of any prejudice stemming from reliance on the part of the Administrators.[68] The fact that IAM, trading on appellant's supposed non-employee status, did not contribute to the pension plan on her behalf during the period contested[69] does not establish the requisite harm since appellant seeks accrued benefits only for those years during which IAM actually contributed. Nor is appellant's quest embarrassed by laches. The laches doctrine "reflects the principle that 'equity aids the vigilant, not those who slumber on their rights,' and is designed to promote diligence and prevent enforcement of stale claims."[70] Appellant's cause of action did not arise in October, 1973, when

---

62. Brief for Appellees at 27–34.

63. See note 37 *supra* and accompanying text.

64. See notes 33–36 *supra* and accompanying text.

65. *Amaro v. Continental Can Co.,* 724 F.2d 747, 752 (9th Cir.1984) (Congress did not intend abrogation of ERISA's standards by contract); see also *Spirides v. Reinhardt, supra* note 47, 198 U.S.App.D.C. at 99, 613 F.2d at 832 ("employment contracts, no matter what the circumstances that justify their execution or what the terms, may not be used to waive protections granted to an individual under [Title VII of the Civil Rights Act of 1964] or any other act of Congress").

66. *Alessi v. Raybestos-Manhattan, Inc.,* 451 U.S. 504, 511, 101 S.Ct. 1895, 1900, 68 L.Ed.2d 402, 409 (1981). The Court relied on a provision of ERISA that "[e]ach pension plan shall provide that an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age and in addition shall satisfy the requirements of paragraphs (1)

and (2) of this section." 29 U.S.C. § 1053(a) (1982). Subsection (2)(A) provides that "an employee who has at least 10 years of service has a nonforfeitable right to 100 percent of his accrued benefit derived from employer contributions." *Id.* § 1053(a)(2)(A).

67. We also note that, because a waiver is an intentional relinquishment of a known right, e.g., *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 1466 (1938), appellant could not in 1973 have waived a statutory entitlement that did not exist until ERISA was enacted in 1974.

68. E.g., *In re Estate of Burrough,* 154 U.S.App. D.C. 259, 262, 475 F.2d 370, 373 (1973) (noting the "settled principle that estoppel requires prejudice wrought by detrimental reliance").

69. See Brief for Appellees at 31.

70. *Gull Airborne Instruments, Inc. v. Weinberger,* 224 U.S.App.D.C. 272, 277, 694 F.2d 838, 843 (1982) (quoting *Powell v. Zuckert,* 125 U.S.App. D.C. 55, 57, 366 F.2d 634, 636 (1966)).

IAM hired her on an hourly basis, but only when the Administrators unjustly refused in May, 1983, to grant her a pension when she left IAM. She wasted no time in presenting her claim, and filed suit promptly after receiving the Administrators' decision.[71] Furthermore, laches, like estoppel, requires a showing of prejudice,[72] and we have discerned none here.

 Nor are we convinced that appellant's suit is sullied by unclean hands. Although she originally may have secured her position as a result of her husband's influence and in violation of policies that seemingly at most were only loosely observed,[73] we perceive no unfairness to IAM, which, after all, obtained 20 to 25 hours a week of her labor for a full year without obligation for any paid holidays, paid sick leave, life or health insurance, or accruing pension benefits. There is no basis for assuming that IAM officials were unaware of her employment or that the asserted infringements of IAM policy were not fully known or easily discoverable. Everything considered, we cannot say that the manner in which appellant got her job renders inequitable the assertion of her right to vesting credit for her first year of service.[74]

## VI. CONCLUSION

The parties have stipulated that if the period in issue is includable in calculating the length of appellant's employment, she would have completed the ten years of service necessary for vesting of her pension benefits when she was laid off by IAM.[75] We hold that she was an employee from October 29, 1973, until September 2, 1974, and accordingly that her right to receive a pension vested and is nonforfeitable. The Administrators' denial of the pension on the basis of her employment status is therefore erroneous as a matter of law. All that remains to be done is a computation by the Administrators of the amount of accrued benefits to which she is entitled.

The judgment of the District Court is reversed and the case is remanded for disposition consistently with this opinion.

*So ordered.*

---

**71.** The Administrators informed appellant of their determination in letters dated May 19, 1983, and June 22, 1983, see notes 13–14 *supra* and accompanying text, and appellant filed her complaint in the District Court on June 30, 1983. Complaint, *supra* note 15, R. Doc. 1.

**72.** E.g., *Gull Airborne Instruments, Inc. v. Weinberger, supra* note 70, 224 U.S.App.D.C. at 277, 694 F.2d at 843.

**73.** See notes 4–6 and accompanying text.

**74.** See *Ellenburg v. Brockway, Inc.,* 763 F.2d 1091, 1097 (9th Cir.1985) (in applying unclean hands doctrine what is material is " 'that the manner of dirtying renders inequitable the assertion of such rights against the defendants' ") (quoting *Republic Molding Corp. v. B.W. Photo Utils.,* 319 F.2d 347, 349 (9th Cir.1963)).

**75.** See note 14 *supra.*