Don L. GRANTHAM, Wallace N. Rassmusen, William W. Granger, Jr., John D. Conners, Donald P. Eckrich, T. Mackin Sexton, James Weiss, Juan D. Metzger, Harry Neimiec, and William G. Karnes, Plaintiffs,

v.

BEATRICE COMPANY, a Delaware corporation, and ConAgra, Inc., a Delaware corporation, Defendants.

No. 90 C 4294.

United States District Court, N.D. Illinois, E.D.

Oct. 4, 1991.

Suzanne McCarthy, Joel Nevin Shapiro, Steven Andrew Drizin, Sachnoff & Weaver, Ltd., Chicago, Ill., for plaintiffs.

Diane Marie Kehl, Donald W. Jenkins, Vedder, Price, Kaufman & Kammholz, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ILANA DIAMOND ROVNER, District Judge.

### I. INTRODUCTION

Plaintiffs bring this suit under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, and the common law of the state of Illinois, seeking a declaration of entitlement to retirement benefits, as well as compensatory damages, prejudgment interest, and costs. Their claims arise out of an Emeritus Benefits Plan devised by Beatrice Companies, Inc., as a retirement benefit for its directors. The defendants, Beatrice Company and ConAgra, Inc. ("ConAgra"), have filed a motion to dismiss the plaintiffs' complaint on the grounds that the Emeritus Benefits Plan is not an "employee pension benefits plan" within the meaning of Section 3(2) of ERISA, 29 U.S.C. § 1002(2) and that the plaintiffs' pendent state law count lacks an independent ground for federal jurisdiction.[1] For

the reasons given below, defendants' motion to dismiss is denied.

### II. FACTS

On a motion to dismiss, the court accepts as true all the well-pleaded factual allegations in the complaint and draws all reasonable inferences from the pleadings in favor of the plaintiff. *E.g., Gillman v. Burlington Northern Railroad Co.*, 878 F.2d 1020, 1022 (7th Cir.1989). Thus the account of the case that follows is that alleged by the plaintiffs.

On or about March 4, 1969, the members of the board of directors of Beatrice Companies, Inc. ("Old Beatrice") created an Emeritus Benefits Plan ("Plan") which provided for the payment of Emeritus Benefits to qualified directors upon their retirement. Under the Plan, a director qualified for Emeritus Benefits by serving for ten years on the Board, or by ten years' cumulative service as a Board member and officer of Old Beatrice, or by ten years' cumulative service as a Board member and as an officer of a company acquired by Old Beatrice immediately prior to the director's election to the Board. Under the Plan, the amount of a director's annual Emeritus Benefits upon his retirement was to equal the annual stipend in effect for directors of Old Beatrice, and was to be increased each year by the same amount that the annual stipend of incumbent directors of Old Beatrice was increased. Each of the plaintiffs, upon his retirement from the board of Old Beatrice, qualified as a Director Emeritus and began to receive regular Emeritus Benefits payments, which were increased annually in accordance with the Plan. In April, 1986, as the result of a merger, Old Beatrice became a wholly-owned subsidiary of New Beatrice. Old Beatrice continued to be liable for all of the obligations of Old Beatrice, including the obligation to pay plaintiffs' Emeritus Benefits. New Beatrice pledged, as a condition of the merger,

---

1. Because plaintiffs' ERISA claim survives the motion to dismiss, the motion to dismiss the pendent state law claim for want of jurisdiction must be denied. Defendants have alternatively moved to dismiss the pendent claim on the ground that it is preempted by ERISA. However, because factual questions preclude a determination at this time as to whether the Emeritus Benefits Plan constitutes an employee benefits plan within the ambit of ERISA, the Court cannot fully resolve the preemption question. Accordingly, the motion to dismiss Count II on the basis of preemption is denied without prejudice. Should the Court later determine that the facts of the case present a viable ERISA claim, defendants may renew their motion to dismiss on preemption grounds. Of course, if the Court determines that the ERISA claim cannot proceed, the pendent state claim will be dismissed.

that where practicable and appropriate the existing benefit plans of Old Beatrice and its subsidiaries would be continued.

From the date of the merger, New Beatrice made quarterly Emeritus Benefits payments to each plaintiff. In October 1987, when Old Beatrice was liquidated, New Beatrice made arrangements to continue plaintiffs' Emeritus Benefits payments by means of an annuity. However, although the amount of the annual stipend for incumbent directors of New Beatrice has increased since October, 1987, New Beatrice has frozen the amount of plaintiffs' Emeritus Benefits at the 1986 level. On or about June 7, 1990, New Beatrice and ConAgra entered into a merger agreement under which ConAgra or a wholly-owned subsidiary of ConAgra was to assume New Beatrice's liability for the Emeritus Benefits Plan. In response to the freezing of their benefit amounts, the plaintiffs have brought this suit against New Beatrice and ConAgra. They contend that under ERISA and the common law they are entitled to benefits which equal those received by incumbent directors. Consequently, they seek a declaration of entitlement to equal benefits, as well as compensatory damages, prejudgment interest and costs.

### III. ANALYSIS

The defendants, New Beatrice and ConAgra, move for the dismissal of the plaintiffs' ERISA claim on the ground that the Emeritus Benefits Plan is not an "employee pension benefits plan" under ERISA. It is not such a plan, they argue, because directors are not employees for purposes of ERISA. The question of whether directors, in their capacity as directors, are employees under ERISA is one of first impression. The issue in this case is further complicated by the terms of the benefits plan in question. Although the Plan's title suggests that it is solely for directors,

its terms are such that an individual could do much of what was necessary to earn the right to participate by working as an employee.[2]

In order to determine whether the plaintiffs are in fact employees for purposes of ERISA, it will therefore first be necessary to consider the question of whether directors, in their capacity as directors, are employees under ERISA. As explained below, appellate courts have approached the general question of whether individuals are employees under ERISA in two different ways. The first approach, and by far the more widely accepted, has been to base the decision on whether the individual in question would be considered an employee at common law. The second, less favored, approach, is to examine the statute in question, and consider whether the inclusion of the disputed category of persons would effectuate the "declared policy and purposes" of the statute. As explained below, even under the more inclusive "declared policy and purposes" test, directors would not be employees for purposes of ERISA.

Most of the appellate decisions which address the general question of how the term "employee" is to be interpreted for purposes of ERISA concern independent contractors. Because independent contractors arguably are not as closely affiliated with the business against which they file an ERISA suit as directors are, it is helpful to examine Department of Labor regulations and appellate decisions concerning partners, who are as closely affiliated as directors and therefore less likely to require the protections of ERISA. As explained below, Department of Labor regulations do not extend ERISA protection to partners, and the appellate courts have also held that partners are not employees for purposes of ERISA. These considerations, as well as the decision of the circuit courts not to extend the protection of the broadly-

---

**2.** As noted above, under the Plan, an individual could qualify for Emeritus Benefits by ten years' cumulative service as a Board member and officer of Old Beatrice. Therefore, an individual who was an officer (and thus indisputably an employee) for nine years and eleven months, and then served as a director for one month prior to retirement, could theoretically qualify for benefits, despite the brevity of her tenure as a director. In such a case, although the participant officially received her benefits because she was a director, the reality would be that she had earned them through her work as an employee.

applied anti-discrimination acts to partners and directors, assist this court in concluding, consistent with the common law, that for purposes of ERISA directors are not employees.

After determining the status of directors under ERISA, it will then be necessary to consider whether the plaintiffs in the case before us were in fact directors. It is well established in the Seventh Circuit that the mere designation "director" is not sufficient to make the object of the designation a director for purposes of legal analysis. Here, the plaintiffs assert that although they were called "directors," they in fact performed so many employee-like functions that they actually were, in fact, employees. As explained below, the Court concludes that the plaintiffs have made assertions which are sufficient to prevent their claim from being dismissed. However, this ruling does not definitely resolve a number of important questions concerning the benefits received by, and the actions of, the plaintiffs during their tenure as directors.

A. *The Status of Directors Under Erisa*

 Under ERISA, an "employee pension benefits plan" is defined as

> any plan, fund or program which was heretofore or is hereafter established or maintained by an employer ... to the extent that by its express terms or as a result of surrounding circumstances such plan, fund or program (i) provides retirement income to employees, or (ii) results

in a deferral of income by employees for periods extending to the termination of covered employment or beyond.

29 U.S.C. § 1002(2). However, ERISA provides "little guidance concerning the interpretation to be given the term 'employee.' " *Darden v. Nationwide Mut. Ins. Co.*, 796 F.2d 701, 704 (4th Cir.1986). The text of the statute cryptically defines "employee" as "any individual employed by an employer," 29 U.S.C. § 1002(6).

As the defendants argue, it is hornbook law that a director is not an employee: "A director of a corporation is not, merely by virtue of his position, its employee." 18B Am.Jur.2d § 1346 at 257 (1985) (footnote omitted). *See Georgia Casualty & Surety Co. v. Seaboard Surety Co.*, 210 F.Supp. 644, 651 (N.D.Ga.1962), *aff'd*, 327 F.2d 666 (5th Cir.1964). This principle is based on a common-law test for employment status. However, this does not settle the matter. It is a subject of dispute among the circuits to what extent the common-law meaning of "employee" should govern in ERISA cases, and to what extent the common-law meaning might conflict with the intentions of Congress in enacting the statute.[3]

1. *The Common–law Interpretation of "Employee"*

As noted above, the question of whether directors are employees for purposes of ERISA is one of first impression. However, the question of whether independent contractors are employees for purposes of ERISA has been addressed by a number of

**3.** The defendants have offered a flawed argument based on statutory construction that the Court shall dispose of here. One of ERISA's terms, "party in interest," is defined in part by the statute to include "an employee, officer, director (or an individual having powers or responsibilities similar to those of officers or directors)".... 29 U.S.C. § 1002(14)(H). The defendants assert that the fact that Congress listed "director" and "employee" separately indicates that Congress chose to firmly distinguish between the terms, and that consequently Congress did not intend directors to be counted as employees. However, it would also follow from this argument that Congress meant to firmly distinguish between officers and employees, and that consequently Congress did not intend officers to be counted as employees. It is clear, however, that under the common law and under

ERISA, officers may be employees. *See* 18B Am.Jur.2d § 1343 at 254. ("Although an officer of a corporation has been regarded as not merely by virtue of his office its employee, any officer of a corporation may serve in the capacity of an employee of the corporation.") (1985) (footnotes omitted). *See also Solheim v. Hastings Housing Co.*, 151 Neb. 264, 37 N.W.2d 212, 219 (1949) (holding that an executive officer of a corporation who also holds the position of an *ordinary employee and performs the work thereof* is within the workmen's compensation act); 29 U.S.C. §§ 1051(2), 1081(a)(3) and 1101(a)(1) (an ERISA top hat plan is a "plan which is unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly trained employees.")

appellate courts. A majority of these appellate courts have favored applying a common-law test of employment status. Although this lawsuit does not concern independent contractors, the cases discussed below are helpful in determining the extent to which the courts have chosen to follow the common law in deciding whether an individual is an employee under ERISA.

In *Holt v. Winpisinger*, 811 F.2d 1532 (D.C.Cir.1987), the plaintiff brought suit under ERISA seeking pension benefits for her years of clerical work at a union office. The district court found that the plaintiff had been employed as an independent contractor, not as an employee, for a crucial portion of her time at the union, and denied her ERISA claim. The court of appeals reversed, and in so doing, discussed the definition of "employee" under ERISA. It found that Congress intended to apply a common-law test of employment status in ERISA cases:

> ERISA defines "employee" merely as "any individual employed by an employer." The statutory definition thus provides little or no guidance when the question is whether a party performing services pursuant to a particular work arrangement is an employee. However, both parties agree and the District Court held that one must look to common-law rules of agency to determine employee status. In this approach we fully concur.

*Id.* at 1538 (footnotes omitted). The court found both statutory and regulatory support for its decision:

> The absence of a comprehensive definition of "employee" in ERISA and other features of that legislation indicate plainly enough that Congress intended the Secretary of the Treasury and the Secretary of Labor, who were administrators of various ERISA provisions, to continue their practice of defining "employee" in terms of common-law agency principles.

See *NLRB v. United Ins. Co.*, 390 U.S. 254, 256, 88 S.Ct. 988, 989–90, 19 L.Ed.2d 1083, 1086 (1968) (Congress intended common-law agency principles to apply when the effort is to distinguish employees from independent contractors under the National Labor Relations Act).... Regulations issued by the Secretary of the Treasury to implement the vesting provisions of 26 U.S.C. § 411 (1982) also apply to minimum vesting under ERISA, 29 U.S.C. § 1202(c) (1982); H.R.Conf. Rep. No. 93–1280, ... *reprinted in* [1974] U.S.Code Cong. & Ad.News 5050 n. 1. Under those Treasury regulations, "employee" is defined in terms of the common law. 26 C.F.R. § 31.3121(d)– 1(c)(1) (1986) ("[e]very individual is an employee if under the usual common law rules the relationship between him and the person for whom he performs services is the legal relationship of employer and employee").

*Id.,* n. 44.[4]

The Fifth Circuit addressed the question of whether an individual was an employee for purposes of ERISA in *Penn v. Howe– Baker Engineers, Inc.*, 898 F.2d 1096 (5th Cir.1990), another independent contractor case. In this case the plaintiff, a structural draftsman and designer, sought pension benefits under ERISA from the company with which he had been affiliated for a number of years. In denying his claim, the court cited *Holt* with approval: "We agree that because Congress provided no specific statutory definition of 'employee' under ERISA we properly apply the common law of agency." *Id.* at 1102, n. 6.

The Sixth Circuit chose to follow *Holt* in *Wolcott v. Nationwide Mut. Ins. Co.*, 884 F.2d 245 (6th Cir.1989), a case concerning the employment status of a commissioned insurance agent. The court of appeals held that the plaintiff insurance agent was an

---

**4.** See also *Mayeske v. International Ass'n of Fire Fighters*, 905 F.2d 1548, 1553 (D.C.Cir.) (per Clarence Thomas, J.), *cert. denied,* —— U.S. ——, 111 S.Ct. 347, 112 L.Ed.2d 311 (1990), reaffirming *Holt*. In explaining its continued adherence to the *Holt* standard, the *Mayeske* court cited *Community for Creative Non–Violence v. Reid,* 490 U.S. 730, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989), in which the Supreme Court applied the same common-law test outlined in *Holt* to hold in a copyright case that a particular sculptor was an independent contractor rather than an employee. 905 F.2d at 1553–54. *See* pages 397– 398 *infra*. *See also Penn v. Howe–Baker Engineers, Inc.,* 898 F.2d 1096, 1102–03 & n. 6 (5th Cir.1990).

independent contractor, and therefore not an employee for purposes of ERISA. In rejecting the district court's "totality of the circumstances" test, under which the district court considered common-law agency factors as only one of a number of factors to consider in determining employment status, the court noted the reasoning set forth in *Holt* with approval:

> Nationwide argues that the district court's decision is contrary to the weight of authority, and that the district court erred in ... departing from the traditional common-law agency factors. We agree. In our view, the better reasoned position on meaning of the term "employee" is set forth in *Holt*, 811 F.2d at 1532.

*Wolcott*, 884 F.2d at 250. *See also id.* at 251.

### 2. The Darden Test for Employee Status

The Fourth Circuit, in contrast to the courts in the cases above, has "taken a mostly statutory, rather than common-law, approach to analyzing whether an individual is an employee or an independent contractor." *Penn*, 898 F.2d at 1102 n. 6. In *Darden v. Nationwide Mut. Ins. Co.*, 796 F.2d 701 (4th Cir.1986), the court rejected the common-law definition of "employee":

> The Supreme Court has emphasized on two occasions that the definition of "employee" should be tailored to the purposes of the statute being construed. *United States v. Silk*, 331 U.S. 704, 713, 67 S.Ct. 1463, 1468, 91 L.Ed. 1757 (1947) (defining "employee" for the purposes of the Social Security Act); *NLRB v. Hearst Publications*, 322 U.S. 111, 120–29, 64 S.Ct. 851, 855–59, 88 L.Ed. 1170 (1944) (defining "employee" for the purposes of the National Labor Relations

Act). In both cases, the Court rejected the argument that the term "employee" as used in federal statutes should be interpreted in accordance with the common-law standard.... Instead, the Court explained, the content of the term "employee" in the context of a particular federal statute is "to be construed 'in the light of the mischief to be corrected and the end to be attained.'" *Silk*, 331 U.S. at 713, 67 S.Ct. at 1468, *quoting Hearst*, 322 U.S. at 124, 64 S.Ct. at 857. In interpreting statutory language so as to define the class of persons protected by the statute, a court must take as its "primary consideration" whether the inclusion of the disputed category of persons would effectuate the "declared policy and purposes" of the statute. *Silk*, 331 U.S. at 713, 67 S.Ct. at 1468; *Hearst*, 322 U.S. at 131–32, 64 S.Ct. at 860–61.

*Darden*, 796 F.2d at 706.[5] This language, taken alone, suggests that under a statutory as opposed to a common-law approach to determining whether an individual is an employee, directors of corporations might in some circumstances be counted as employees for purposes of ERISA. However, the *Darden* court's discussion of the "declared policy and purposes" which it believed Congress had in mind when it enacted the statute makes it clear that directors likely would not be covered by the provisions of ERISA even under *Darden's* more generous approach. According to the *Darden* court, one of the primary concerns Congress had in mind in enacting ERISA was that many employees were losing anticipated retirement benefits despite having worked long years. *Id.* However, the court made it clear that it believed that Congress meant to apply the statute with

---

**5.** The *Darden* court's reliance on *Hearst* and *Silk* appears to be misplaced. As the Tenth Circuit noted in *Wheeler v. Hurdman*, 825 F.2d 257, 268–69 n. 24 (10th Cir.), *cert. denied*, 484 U.S. 986, 108 S.Ct. 503, 98 L.Ed.2d 501 (1987), "Subsequent to *Hearst, Silk* and *Bartels* [*v. Birmingham*, 332 U.S. 126, 67 S.Ct. 1547, 91 L.Ed.2d 1947 (1947)], Congress amended the NLRB [sic] and SSA to restore common law definitions to employee/independent contractor distinctions...." *See* 29 U.S.C.S. §§ 152(3) (historical notes regarding 1947 amendment) (noting that National Labor Relations Act amended to ex-

clude independent contractors). *See also* 42 U.S.C. § 410(j)(2) (Social Security Act defines employee as person who has status of employee under "usual common law rules"); *Schmidt v. Ewing*, 108 F.Supp. 505, 509 (M.D.Pa.1952) (noting that Act was amended in 1948 to restore common-law definition of employee). This suggests that even if Congress at one point intended the NLRA and the SSA, and, by inference, ERISA, to have a broader sweep than the common law definition of "employee" would allow, Congress no longer has such an intention.

an eye to disparity in bargaining power between employers and employees: "[I]mplicit in the congressional statement of purpose is the recognition that the persons to be aided by the statute lacked sufficient economic bargaining power to obtain contractual rights to nonforfeitable benefits. *Had they possessed such bargaining power, statutory reform would have been unnecessary." Id.* at 707 (emphasis added) (footnote omitted).

Thus the *Darden* court did not conclude that all individuals who received payments for tasks performed should be protected by ERISA. Instead, it concluded that the class of persons protected by ERISA should include: 1) persons who had a reasonable expectation of retirement benefits; 2) persons who relied on that expectation; and 3) persons who lacked sufficient economic bargaining power to contract for nonforfeitable benefits. 796 F.2d at 706–07. The third factor was particularly important to the court. *See id.* & n. 6. The plaintiff in the case had been employed as an insurance salesman for many years by a major insurance company. Although the court concluded that in this instance the evidence concerning the respective bargaining strength of the parties was incomplete, and remanded the case to the district court for a determination of that issue, *id.* at 707, it is evident that the court believed that the plaintiff's position was probably not one of great influence. *See id.* at 705.

It appears that with the exception of the Fourth Circuit, those circuits which have considered the matter have favored the *Holt* common-law test in determining whether a person is an employee or an independent contractor for purposes of ERISA. *See Wolcott,* 884 F.2d at 250 (explicitly rejecting *Darden ); see also Penn,* 898 F.2d at 1102 n. 6.[6] Significantly, the Supreme Court's opinion in *Community for Creative Non–Violence v. Reid,* 490 U.S. 730, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989), supports use of the *Holt* test. *Reid* concerned the question of whether a sculptor who created a single sculpture for a homelessness group was an employee of the group or merely an independent contractor under the Copyright Act of 1976, 17 U.S.C. § 101. The answer determined who owned the copyright to the work. In reaching its conclusion that the common-law principles of agency governed, the Supreme Court reasoned:

The starting point for our interpretation of a statute is always its language. *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). The Act nowhere defines the terms "employee" or "scope of employment." It is, however, well established that "[w]here Congress uses terms that have accumulated settled meaning under ... the common law, a court must infer, unless the statute otherwise dictates, that congress means to incorporate the

---

**6.** The Seventh Circuit's position on this matter is unclear. *Wardle v. Central States, Southeast and Southwest Areas Pension Fund,* 627 F.2d 820 (7th Cir.1980), *cert. denied,* 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981), concerned a truck driver who brought suit under ERISA against the trustees of a pension fund who denied him benefits. In reviewing the decision of the district court, the court of appeals found it necessary to determine whether Wardle, the truck driver, was an employee or an independent contractor. Considering the facts in light of the common-law master-servant test, the court concluded that the pension fund's determination that Wardle was not an employee was not arbitrary or capricious as a matter of law. *Id.* at 824–26. However, the use in *Wardle* of a common-law test for employee status is not dispositive. In *Darden, supra,* 796 F.2d at 704–05 n. 4, the court distinguished *Wardle.* The *Dar-*

*den* court noted that *Wardle* had involved a claim under a particular pension plan, and that the court in *Wardle* had interpreted "employee" as used in the pension plan document, not as used in the statute. The text of *Wardle* supports the finding that the court interpreted "employee" as it was used in the pension plan document: "Since neither party contends that any applicable statutory definition of employee exists, the standard is that of common law master-servant." *Wardle,* 627 F.2d at 824. The court then went on to note that the pension plan in question required the application of the common-law test. *Id.* at 825. It seems that the *Wardle* court acknowledged that a standard other than the common-law standard might exist; however, the parties had not raised the issue, and the court did not choose to address it. *See id.* at 824. It does not follow, of course, that the Seventh Circuit would reject the *Holt* test if the issue were properly presented to it.

established meaning of these terms." *NLRB v. Amax Coal Co.,* 453 U.S. 322, 329, 101 S.Ct. 2789, 2794, 69 L.Ed.2d 672 (1981); see also *Perrin v. United States,* 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979). In the past, when Congress has used the term "employee" without defining it, we have concluded that Congress intended to describe the conventional master-servant relationship as understood by common law agency doctrine. See, *e.g., Kelley v. Southern Pacific Co.,* 419 U.S. 318, 322–323, 95 S.Ct. 472, 475–476, 42 L.Ed.2d 498 (1974); *Baker v. Texas & Pacific R. Co.,* 359 U.S. 227, 228, 79 S.Ct. 664, 665, 3 L.Ed.2d 756 (1959) (*per curiam*); *Robinson v. Baltimore & Ohio R. Co.,* 237 U.S. 84, 94, 35 S.Ct. 491, 494, 59 L.Ed. 849 (1915). *Reid,* 490 U.S. at 739–40, 109 S.Ct. at 2172. The Supreme Court went on to distinguish *NLRB v. Hearst Publications, Inc.,* 322 U.S. 111, 124–132, 64 S.Ct. 851, 857–861, 88 L.Ed. 1170 (1940), upon which the *Darden* court had relied, noting that in *Hearst,* the "structure and context of [the] statute indicated [a] broader definition." *Reid,* 490 U.S. at 740, 109 S.Ct. at 2172.

In sum, the circuits' agreement that Congress offers "little guidance concerning the interpretation to be given the term 'employee'" in the context of ERISA, *Darden,* 796 F.2d at 704, and the Supreme Court's firm emphasis in *Reid* on the necessity of applying common-law definitions when Congress has used the term "employee" without defining it, are strong arguments for the application of common-law definitions in ERISA cases as a general rule, and in the case of directors in particular. Further support is to be found in the acceptance among a number of the circuits of a common-law test for employment status in claims made under ERISA. Although the court in *Darden* seemed to rely upon the context of the enactment of ERISA to infer the need for broader definition of "employee" than that provided by the common law, it does not appear that even the *Darden* test would apply in the case of directors, who rarely would "lac[k] sufficient economic bargaining power to obtain contractual rights to nonforfeitable benefits." *Dar-*

*den,* 796 F.2d at 707. The contrast between the circumstances before the court in *Darden* and the situation in the case before this Court could hardly be starker. It is difficult to imagine that directors of corporations such as the plaintiffs in this case, a number of whom were instrumental in creating the Plan, lacked sufficient economic bargaining power to contract for nonforfeitable benefits.

Although the majority of the cases on the subject concern the employment status of independent contractors, there is little reason to think that Congress chose to extend special protections to directors which it denied independent contractors. However, the possibility that Congress did believe that directors deserved greater protection than independent contractors is discussed below.

### 3. Congressional Intent that Partners Not Qualify as Employees Under Erisa

As explained above, there is strong support among the circuits for the general application of a common-law test when determining employee status in ERISA cases. However, the courts in the cases heretofore discussed have been faced with claims brought by independent contractors, who, as the plaintiffs argue, are not as closely affiliated as are ordinary employees with the business against which they bring suit. The plaintiffs argue that the independent contractor cases are therefore distinguishable. However, the plaintiffs' argument finds a serious obstacle in *Robertson v. Alexander Grant & Co.,* 798 F.2d 868 (5th Cir.1986), *cert. denied,* 479 U.S. 1089, 107 S.Ct. 1296, 94 L.Ed.2d 152 (1987). That case concerned an accountant who worked as a partner in a national accounting firm for a number of years. Several months after leaving the firm in a dispute with firm management, he requested that the firm pay his retirement benefits. Upon the firm's refusal, he brought suit under ERISA. Upon considering his claim, the Fifth Circuit found that Congress did not intend to extend ERISA protections to retirement plans which covered only part-

ners. *Id.* at 870–71. In reaching its conclusion that ERISA does not apply to retirement plans which cover only partners, the court deferred to regulations promulgated by the Secretary of Labor[7] which indicate that partners are not employees under ERISA. *Id.* The plaintiff argued that not counting partners as employees conflicted with ERISA's legislative history, and that as a consequence the regulations should be disregarded. The court disagreed:

> One of the purposes of ERISA was to correct the abuses occurring in the management of pension plans that constitute the retirement benefits held in trust for workers in traditional employer-employee relationships. *See* S.Rep. No. 127, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Ad.News 4838, 4838–44; H.R.Rep. No. 533, 93d Cong., 2d Sess., *reprinted in* 1974 U.S. Code Cong. & Ad.News 4639, 4639–43. Employees in the traditional employer-employee relationship are more vulnerable than partners in a partnership are to abuses because workers typically lack control over pension plan management and input into the decision whether to extend pension benefits to certain employees. On the other hand, a partner has more control and input than does an employee since a partner has a vote in partnership affairs.

Furthermore, a partnership contains a self-policing feature largely absent in the typical employer-employee relationship.

> In the partnership situation the partners have an incentive not to agree to provisions that may harm certain members of the partnership because each partner knows that he could end up being the partner who is harmed.... On the other hand, the self-policing function is less strong in the typical employer-employee relationship. The employer wants to earn profits for himself or for the shareholders and has less incentive to treat the employees as fairly as a partner would treat his partners. Because of the difference between the partnership situation and the typical employer-employee relationship Congress easily may have intended only to regulate the latter relationship.... Accordingly, we hold that ERISA is inapplicable to retirement plans covering only partners.

*Robertson,* 798 F.2d at 870–71 (citations omitted).

The reasoning of the *Robertson* court concerning the employment status of partners is readily applicable in the case of directors, who often have as much power and influence as partners. Directors of a corporation are far less vulnerable to pension plan abuses than are traditional employees. Unlike traditional employees, di-

---

7. Because ERISA "authorizes the Secretary of Labor to prescribe such regulations as he finds necessary or appropriate to carry out the provisions" of the statute, 29 U.S.C. § 1135, it is necessary to determine whether the Secretary has in fact prescribed any regulations concerning whether directors ought to be found to be "employees" under ERISA. "[R]egulations prescribed by the Secretary are 'entitled to considerable deference, and we will uphold any interpretation that is reasonably defensible. If a regulation is "not inconsistent" with the legislative history, we will sustain it.'" *Robertson,* 798 F.2d at 870 (citations omitted).

Although there appear to be no regulations concerning whether directors should be considered to be employees for purposes of ERISA, the Secretary has issued regulations concerning the status of partners in partnerships:

> Plans without employees. For purposes of Title I of the Act and this chapter, the term "employee benefit plan" shall not include any plan, fund or program, other than an apprenticeship or other training program, under which no employees are participants covered under the plan, as defined in paragraph (d) of this section. *For example, a so-called "Keogh" or "H.R. 10" plan under which only partners or only a sole proprietor are participants covered under the plan will not be covered under Title I.* However, a Keogh plan under which one or more common law employees, in addition to the self-employed individuals, are participants covered under the plan, will be covered under Title I.

9 C.F.R. section 2510.3–3(b) (1990) (emphasis added).

> A partner in a partnership and his or her spouse shall not be deemed to be employees with respect to the partnership.

29 C.F.R. § 2510.3–3(c)(2) (1990). *See also Robertson,* 798 F.2d at 869–70.

The Secretary's decision to consider common-law employees to be employees under ERISA, and to exclude partners, strongly suggests that should the Secretary consider the question, she would choose to exclude directors as well.

rectors often design and vote upon their own retirement plans. This was in fact true in the case before the Court. As the plaintiffs' own pleadings establish, "On or about March 4, 1969, the Board of Directors of Old Beatrice, of which four of the plaintiffs were then members, created the Plan...."[8] Directors have every incentive to create the best possible plan for themselves. If Congress intended to regulate only "typical employer-employee relationship[s]," *Robertson*, 798 F.2d at 871, it seems reasonable to infer that Congress did not intend to regulate pension plans of directors.

### 4. *"Employee" for Purposes of the Anti-discrimination Statutes*

As explained above, the Court finds support in a number of circuits for the general application of the common-law definition of "employee" in the context of ERISA suits. In addition, the *Robertson* court's rationale in its decision concerning partners suggests that Congress did not intend to afford ERISA protection to directors. This conclusion is further buttressed by a number of cases in which the circuit courts have concluded that partners and directors are not employees for purposes of federal anti-discrimination statutes. In these cases, the courts faced the same difficulty faced in the case of ERISA claims—a lack of guidance from Congress concerning the proper interpretation of the term "employee." The circuit courts have in general chosen to construe "employee" broadly under the anti-discrimination statutes. *See e.g., Armbruster v. Quinn*, 711 F.2d 1332, 1336 (6th Cir.1983) ("To effectuate its purpose of eradicating the evils of employment discrimination, Title VII should be given a liberal construction. The impact of this construction is the broad interpretation given to the employer and employee provi-

sions.") (citations omitted). *See also Wheeler v. Main Hurdman*, 825 F.2d 257, 262 (10th Cir.) ("In our review of the anti-discrimination laws we must be mindful of their remedial purposes, and liberally interpret their provisions to that end.") (citations omited), *cert. denied*, 484 U.S. 986, 108 S.Ct. 503, 98 L.Ed.2d 501 (1987). It is significant that despite the wide reach attributed to these statutes, the line has been drawn so as not to include directors and partners. *See, e.g., Hyland v. New Haven Radiology Assoc., P.C.*, 794 F.2d 793, 797 (2d Cir.1986) ("It is generally accepted that the benefits of the anti-discrimination statutes ... do not extend to those who properly are classified as partners.")

In *Wheeler*, the Tenth Circuit considered whether Title VII, the Age Discrimination in Employment Act, the Equal Pay Act and the Fair Labor Standards Act, which are designed to protect employees, applied to a woman for the period of time during which she was a partner. The district court, applying an economic realities test, had concluded that although a partner, the plaintiff was also an employee for the purposes of each of the acts. Despite the EEOC's amicus brief supporting the plaintiff, the court of appeals reversed. In reaching its decision, the court discussed the problem of reaching an accurate definition of "employee" for purposes of the anti-discrimination statutes. As all of the parties to the case acknowledged, there was nothing in the legislative history of the Acts explicitly addressing the definition of "employee."[9] The language of the acts themselves was of no assistance: "The statutory definition of employee under each of these Acts is virtually identical, and circular in its description." 825 F.2d at 263 (footnote omitted). Title VII defines "employee" as "an individual employed by an employer;" the ADEA defines "employee" as "an individual employed by any employer," and the

---

**8.** Complaint ¶ 16. *See also* Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss at 2.

**9.** The court did observe that "Senator Hugo Black stated during debates on the FLSA that the term 'employee' in the Act was given the 'broadest definition that has ever been included

in any one Act,' " and that "[d]uring the Senate debate on Title VII, Senator Joseph Clark of Pennsylvania stated that the term 'employer' was 'intended to have its common dictionary meaning except as qualified by the Act.' " 825 F.2d at 263, n. 13 (citations omitted). However, the court drew no conclusions from this legislative history.

FLSA defines "employee" as "any individual employed by an employer." *Id.* & n. 11. Observing that cases construing definitions of one of the acts are to be viewed as persuasive authority when interpreting the others, *id.* at 263, the court turned to judicial interpretations of "employee" under these acts. In so doing, it found that "not one court has applied the Acts to a bona fide general partner against his or her partners or partnership...." *Id.* at 266.[10] The court also found that, despite the EEOC's arguments to the contrary, "the Commission by its relative silence and inaction, and its approach to the issue when raised, made it seem likely that it doubted any general coverage of partners by Title VII, excluding obvious sham situations." *Id.* Although the court acknowledged that it was "committed to use of an economic realities test in applying remedial social legislation," *id.* at 271, it concluded that the plaintiff and the EEOC, in arguing that economic realities merited application of statutory protection to a partner, were ignoring the economic reality of partnership status itself, which carries with it risks of loss and liability that employee status does not. *Id.* at 274.

In reaching its conclusion that a partner is not an employee under the anti-discrimination acts, the court in *Wheeler* sought to be "mindful of their remedial purposes, and liberally interpret their provisions to that end." *Id.* at 262. However, the court admonished that "[s]uch interpretation ... cannot be used as a justification for rewriting the statutes." *Id.* There were, the court found, "statutory limitations to the argument that the remedial ends of the Acts justify as means any definition of employee which results in coverage." *Id.*

at 275. In the court's view, these statutory limitations prevented the application of the anti-discrimination acts to partners:

> To suggest that Congress intended the provisions of Title VII, the ADEA, and the FLSA to reach all situations where discrimination may arise in a business setting is to suggest that it enacted these statutes with the intent that they cover all individuals having an economic relationship with a business. This would make employee status largely irrelevant and would essentially transform the employment discrimination statutes into *business* discrimination statutes. *Hickey v. Arkla Indus., Inc.*, 699 F.2d 748, 752 (5th Cir.1983). If this were the case, then we must question why Congress bothered to limit each statute's reach to employment practices. The requirement that the statutes cover only employment situations suggests that Congress perceived a need to limit the application of these statutes. *Id.; see also Hishon v. King & Spalding*, 467 U.S. 69, 79, 104 S.Ct. 2229, 2235, 81 L.Ed.2d 59 (1984) (Powell, J., concurring).
>
> The word "employee," however broadly defined, is still "employee," and circumscribed by meanings reasonably related to that word. Drafters of the statute gave no indication that they were departing from the common discourse of the republic when fashioning a law to be understood by and applied to its citizens.

*Id.* at 275–76 (footnote omitted).

Two Seventh Circuit decisions have held that directors are not employees for purposes of the anti-discrimination statutes. In *Chavero v. Local 241, Div. of the Amalgamated Transit Union*, 787 F.2d 1154

---

**10.** *See Burke v. Friedman*, 556 F.2d 867 (7th Cir.1977) (individual partners of a partnership could not be counted as employees for purposes of the fifteen-employee minimum for Title VII coverage), and *E.E.O.C. v. Dowd & Dowd, Ltd.*, 736 F.2d 1177 (7th Cir.1984) (lawyer/shareholders of a professional corporation were not employees for purposes of Title VII coverage because they were, in essence, partners in a partnership). *See also Hishon v. King & Spalding*, 678 F.2d 1022 (11th Cir.1982), *rev'd on other grounds*, 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984), in which the Supreme Court did not

reach the specific question of whether Title VII applied to partners, thereby leaving intact the Eleventh Circuit's views on the subject: "the partners own the partnership; they are not its 'employees' under Title VII. We find a clear distinction between employees of a corporation and partners of a law firm." *Hishon*, 678 F.2d at 1028. *See also* 467 U.S. at 79, 104 S.Ct. at 2236 (Powell, J., concurring) ("[t]he relationship among law partners differs markedly from that between employer and employee"); *Fountain v. Metcalf, Zima & Co., P.A.*, 925 F.2d 1398 (11th Cir.1991).

(7th Cir.1986) (per curiam), the court confronted the question of whether members of a board of directors were employees for purposes of Title VII. In this case, a former employee of a union brought suit against the union, charging employment discrimination. Because an employer may be liable under Title VII only if it has 15 or more employees, the former employee found it necessary to argue that the executive board members of the union were employees. The substance of her argument was that all board members were employees of the union because they "do all the work for the union." *Id.* at 1156. The court bluntly rejected this argument:

> While courts generally construe the term "employee" broadly under all provisions of Title VII, *Armbruster v. Quinn,* 711 F.2d 1332, 1340 (6th Cir.1983), members of boards of directors are not employees for purposes of Title VII coverage under any standards. 1 Larson, *Employment Discrimination* § 5.25 at 2–22 (1985).

*Id.* (additional citation omitted).

In *Zimmerman v. North American Signal Co.,* 704 F.2d 347 (7th Cir.1983), the court refused to count as employees for purposes of the 15–employee minimum of Title VII the wives of two of the company's major shareholders who were paid for their roles as directors but received no compensation and took no active role in their positions as corporate officers:

> We cannot agree with Zimmerman that Charlene Wisbrod and Gloria Neiman should be considered employees of North American by virtue of their positions as directors or as unpaid, inactive officers.... [W]e have found no case law, legislative history or any other indication that the term "employee" should be given this expansive meaning for the purpose of this Act. The legislative history of the nearly identical definitional provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(b), militates against distorting traditional concepts of employment relationships. "The term 'employer' is intended to have its common dictionary meaning, except as expressly qualified by the act." 110 Cong. Rec. 7216 (April 8, 1964). The term "em-

ployee" is "defined for the purpose of the title in the manner common for Federal statutes...." H.R.Rep. No. 914, 88 Cong.2d Sess., reprinted in 1964 U.S.Code Cong. & Ad.News 2355, 2402. *We do not believe Congress intended the term "employee" to include persons who are no more than directors of a corporation* or unpaid, inactive officers."

*Id.* at 352 (footnote omitted) (emphasis added).

Many of the considerations noted by the courts in *Wheeler, Chavero* and *Zimmerman* are relevant to an assessment of the status of directors in ERISA cases. Congress chose when drafting ERISA to limit the statute's reach to employees, rather than to "all individuals having an economic relationship with a business," *Wheeler,* 825 F.2d at 275, and to employment practices, rather than all business transactions. As the independent contractor cases indicate, Congress clearly did not intend ERISA to apply in every case in which an individual received money from a business. Congress gave no sign that it intended to depart from the traditional meaning of the term "employee" when fashioning ERISA. *See id.*

In sum, a number of considerations lead this court to conclude that directors, in their capacity as directors, are not employees for purposes of ERISA. One consideration is the general practice of applying the common-law definition of "employee" in ERISA cases; a practice which the Supreme Court favored in *Reid.* Although most instances of this approach occur in independent contractor cases, the language of these cases is strong evidence that the general intent of Congress was not to "depar[t] from the common discourse of the republic." *Wheeler,* 825 F.2d at 276. The Fourth Circuit's decision in *Darden,* which, in taking a statutory approach, emphasized the relative power of employers and employees, is hardly applicable to directors, who do not lack bargaining power. Further considerations are Department of Labor regulations and appellate decisions which hold that partners are not employees

for purposes of ERISA, and the decision of the circuit courts not to extend the protection of the broadly-applied anti-discrimination acts to partners and directors. In light of these considerations, this court finds that directors, in their capacity as directors, are not employees for purposes of ERISA. However, as explained below, this finding is not dispositive of the case before the Court.

### B. Plaintiffs' Employment Status

Although, as explained above, this court has concluded that directors, in their capacity as directors, are not employees for purposes of ERISA, the resolution of this case is complicated by an additional consideration. This is the question of whether the plaintiffs were in fact directors during the time that they earned their Emeritus Benefits. Plaintiffs appear to argue that although they were designated "directors," they in fact performed the sorts of functions that employees perform, and thus were in reality employees. Because they were in fact employees, plaintiffs reason, the Emeritus Benefits Plan was an employee benefits plan covered by ERISA. As explained below, viewing the allegations of the complaint in the light most favorable to the plaintiffs, as the Court must on a motion to dismiss, the plaintiffs have made assertions sufficient to prevent dismissal of their claim at this juncture. However, the pleadings do not address issues that are crucial to a determination as to whether or not plaintiffs have a viable ERISA claim.

### 1. Plaintiffs' Allegations of Employee Status

■ Although "[d]irectors are traditionally employer rather than employee positions," it is well established that "a director may accept duties that make him also an employee." *Chavero, supra,* 787 F.2d at 1157. *See also* 18B Am.Jur.2d § 1346 at 257–58. A number of cases brought under the anti-discrimination acts provide guidance in determining whether a particular director should be counted as an employee.

*E.E.O.C. v. First Catholic Slovak Ladies Association,* 694 F.2d 1068 (6th Cir. 1982), *cert. denied,* 464 U.S. 819, 104 S.Ct. 80, 78 L.Ed.2d 90 (1983), concerned a claim of age discrimination. The plaintiffs were two former directors of a benevolent society. As required by the bylaws, they also served as officers of the society. The issue in the case was a bylaw provision which set age restrictions on members of the board of directors. Because the bylaws of the society also required that all officers be members of the board of directors, the age restriction also applied to any person who desired to be an officer. The district court found that "the directors and therefore the officers of the [society] were not employees protected by the ADEA primarily because they assumed office by an elective process and because directorships have traditionally been viewed as employer rather than employee positions." *Id.* at 1069. On appeal, the Sixth Circuit reversed. The court of appeals found that the district court had failed to assess accurately the "true status" of the women. *Id.* at 1070. "These individuals performed traditional employee duties: maintaining records, preparing financial statements, managing the office. They were responsible for their work to the governing body of the organization and they drew salaries as employees. Their participation on the policy-making Board of Directors does not detract from their primary role as employees." *Id.*

In the case before this Court, the plaintiffs assert that "during their tenure as directors, plaintiffs also served as executive officers of the company. They were not 'outside directors' who merely attended regularly scheduled Board meetings and pocketed their annual Board member fees; they were working directors and officers who ... created the policies of Old Beatrice...."[11] It may therefore be the case

---

11. Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss at 9. These assertions, although they are grounded in the allegations of the complaint, tend to stray into matters beyond the four corners of the complaint.

Indeed, plaintiffs have submitted an affidavit in further support of these assertions. *Id.,* Ex. C. Because they implicate factual matters beyond the face of the complaint, the Court has not considered the substance of either the affidavit

that like the plaintiffs in *First Catholic,* plaintiffs here managed the daily affairs of the company, maintained offices there, and drew salaries. These assertions tend to support the plaintiffs' claim that some of the tasks that they performed were of the sort that employees perform.

The plaintiffs' argument is also given support by *Chavero, supra,* 787 F.2d 1154. In rejecting the plaintiff's claim that board members should be counted as employees for jurisdictional purposes, the court observed that "the primary consideration is whether an employer-employee relationship exists." *Id.* at 1157. The court considered two factors in concluding that such a relationship did not exist in that case. One was that the record "fail[ed] to establish that the board members perform[ed] traditional employee duties." *Id.* Union officers, rather than the board members in question, managed the daily operations of the union under the direction of the board. *Id.* The board met only twice a month, and its members were paid at a per diem rate for these meetings. Finally, each board member was a regular employee of a separate entity. *See id.* at 1165. In this case, however, the plaintiff directors claim to have managed the day-to-day operations of Old Beatrice, and that they did it in a "hands on" manner, rather than merely meeting twice a month. And, although "a director is not an employee because he draws a salary," *id.* at 1157, the plaintiffs' salaried status in the case before the Court tends to distinguish them from the directors in *Chavero,* whose limited duties were reflected in their per diem method of compensation. Finally, there is no suggestion that the plaintiffs in this case were regular employees of a separate entity.

Another factor considered by the *Chavero* court in determining whether an employer-employee relationship existed was whether the board members reported to anyone above them. The court found that they did not: "Although the board undertakes investigations of all grievances and disputes between union members and the company, it reports to no one other than itself." *Id.* at 1157. However, care must be used when basing a determination of employment status on the grounds of whether the individual in question reported to anyone above him. *See Porter v. Commissioner of Internal Revenue,* 856 F.2d 1205 (8th Cir.1988) (court found that federal judges are employees of the federal government for purposes of assessing eligibility for tax deduction, despite tax court's reasoning that federal judges answer to no one).

In the case before the Court, it is unclear whether plaintiffs reported to anyone above them. However, the other allegations plaintiffs have made are sufficient to avoid dismissal of their claim that they were employees during the time that they were designated "directors" at this time.

### 2. Resolution of Plaintiffs' Status Would Require Information Which is Not Before This Court

Although the plaintiffs have asserted that they were employees as well as directors during the time that they were designated "directors" well enough to avoid dismissal of their claim, a definitive resolution of the question of plaintiffs' status would require information which is not before this court. It is not clear from an examination of the complaint or the briefing whether the Emeritus Benefits were intended to compensate the plaintiffs solely for their work as directors, or whether the benefits were intended to compensate them for their work as employees as well. If the Emeritus Benefits were intended to compensate them solely for their work as directors, the matter would be clear: ERISA

---

or the arguments which it was meant to substantiate. The complaint itself leaves room for the contention that plaintiffs may have held the duties of employees during their tenure as directors. The complaint describes plaintiffs as "longtime employees and directors" of Old Beatrice. (Complaint ¶ 3.) In addition, the allegations indicate that each of the plaintiffs served as an officer of Old Beatrice at some point within his tenure as a director. (*Id.,* ¶¶ 4–13.) Finally, as discussed below, the allegations concerning eligibility for Emeritus Benefits (*see id.* ¶ 16) permit the argument that such benefits could be earned through one's service as an officer of the company. *See also* n. 2, *supra.*

would not apply to the Plan, and this Court would dismiss the case. However, if the Emeritus Benefits were intended to compensate them for their work as employees, ERISA would apply to the Emeritus Benefits Plan.

The plaintiffs assert that their Emeritus Benefits were a reward for their long years with the company including those years that they spent as employees.[12] However, in order to support the assertion that the Emeritus Plan was intended to compensate them for their work as employees, it would be necessary to establish at least two things. It would first be necessary to establish that the plaintiffs were not covered by a general employee retirement plan during the time that they were solely designated "directors." If they were covered by a general employee retirement plan at that time, this would strongly suggest that the employee-type work they performed while directors was covered by the general employee retirement plan, and that their Emeritus Benefits were exclusively for their work as directors.

It would also be necessary to determine whether Old Beatrice had provided Emeritus Benefits to directors who had not performed the employee-type work for the company. If there were such directors, who received full Emeritus Benefits without ever having done employee-type work for Old Beatrice, this would very strongly suggest that the Emeritus Benefits were in reality meant to compensate directors in their capacity as directors. If such were the case, ERISA would not apply to the Emeritus Benefits Plan. If, however, it appears that in order to receive Emeritus Benefits a director must have performed employee-type work for Old Beatrice, this would very strongly suggest that the Emeritus Benefits were in reality meant to compensate directors for their work as employees. In such a case, ERISA likely would apply.

These are all factual matters which cannot be resolved on the pleadings as they stand. However, because they implicate the Court's jurisdiction over the action, they must be disposed of before proceeding to the merits of the action. A brief period of discovery focused upon the nature of both plaintiffs' service as directors and the Emeritus Benefits, followed by an evidentiary hearing or dispositive motions on the question of whether plaintiffs qualify as "employees" under ERISA, may be appropriate. The parties should be prepared to address what they believe to be the appropriate course at the forthcoming status hearing. An answer to the complaint is held in abeyance pending further order of the Court.

## IV. CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss is denied. The Court will conduct a status hearing at 9:30 a.m. on October 17, 1991 for purposes of addressing how the case will proceed. An answer to the complaint is held in abeyance pending further order of the Court.

---

12. *See* Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss at 2. The provisions of the Plan would appear to support the plaintiffs' claim. Under the Plan, an individual could qualify for Emeritus Benefits by ten years' *cumulative* service as a Board member and officer of Old Beatrice. (*See* Complaint, ¶ 16.) The

implication is that it would be possible for a recipient of Emeritus Benefits to have been a director for only a moment. (*See* n. 2, *supra.*) In such a case, despite the designation of the benefits as being for directors, the reality would be that the recipient was given the benefits for his work as an employee.