Clay **BRONK, Maurine Burk, Mark Damilini, Jacqueline Enriquez, Chuck Fletcher, Natalie Franz, John Gierka, Randolph Gilmore, Mark Hay, Kim Johnson, John Kennedy, Jane Knutson, Carol Major, Sandra Sanchez, Lynn Saxe, John Saxe, Ling Sigstedt, Steven Stollman, Donna Sly, Lydia Thomas, Robert Toannon, Frank Vigil, Cynthia Voigt, Colission Wells, and Lynn G. Wulf, individually and as representatives of a Class, Plaintiffs,**

v.

**MOUNTAIN STATES TELEPHONE & TELEGRAPH, INC., d/b/a US West Communications, a Colorado corporation; US West Inc.; US West Inc. Employees Benefit Committee; US West Defined Contributions Plan Committee; and US West Communications Base Benefits Committee, Defendants.**

Civil Action No. 93–D–1961.

United States District Court,
D. Colorado.

Oct. 29, 1996.

Lee T. Judd, Todd J. McNamara, Denver, CO, for Plaintiffs.

Raymond W. Martin, Denver, CO, Craig E. Epperson, D. Ward Kallstrom, Erika M. Pardo, Lillick & Charles, San Francisco, CA, for Defendants.

## MEMORANDUM OPINION AND ORDER

DANIEL, District Judge.

## I. *INTRODUCTION*

This case is brought pursuant to the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* ("ERISA") against Mountain States Telephone & Telegraph ("MSTT") and US West Inc. ("US West") as the plan sponsors of certain employee pension and/or welfare plans. US West, Inc. Employee Benefit Committee ("EBC"), US West Defined Contribution Plans Committee ("DCPC") and US West Communications Base Benefits Committee ("BBC") are sued as "administrators" of the plans. The plans which are the subject of this Action include the US West Pension Plan (the "Pension Plan"), the US West Savings and Security Plan/ESOP (the "Savings Plan"), the US West Savings Plan/ESOP for Salaried Employees (the "Savings Plan for Salaried Employees"), the US West Payroll Stock Organization Plan/PAYSOP (the "PAYSOP"), the US West Sickness Accident Disability Plan (the "Sickness Plan"), the US West Health Care Plan (the "Health Care Plan"), and the US West Group Life Insurance Plan (the "Group Life Plan") (collectively "the Plans").

Plaintiffs assert claims pursuant to 29 U.S.C. § 1132(a)(1)(B) for damages and § 1132(a)(3) for equitable relief as a result of the Defendants' alleged wrongful denial of Plaintiffs' participation in the Plans. Plaintiffs bring this action on behalf of themselves and as a class action on behalf of "[a]ll persons providing services to either US West or MSTT or their respective subsidiaries, and who were paid through temporary service agencies or leasing agencies, and who fall within the common law definition of employee."

In support of their contention that they meet the common law definition of employee, Plaintiffs allege that (1) they were interviewed by US West, MSTT and/or their subsidiaries; (2) they did not provide services to any other organizations, and were completely directed and controlled by management personnel of US West, MSTT and/or their subsidiaries; (3) their duties were an integral part of US West's, MSTT's and/or their subsidiaries' operation, as their functions were necessary to the business; (4) they were employed with US West more than one year; and (5) US West, MSTT and/or their subsidiaries had the exclusive right to terminate their employment relationship. Defendants disagree, asserting that Plaintiffs are leased employees whose hiring, termination and payment are controlled by the leased companies. Moreover, at least some of the leasing contracts required each leasing company to provide insurance for its employees and provided that "[the leasing company] understands and agrees that [US West] will provide no benefits to [leased workers]." Also, at least some of the contracts made the leasing companies responsible for any claims or disputes by the leased workers relating to "employment or the termination thereof" and stated that "all workers shall be considered solely the employees or agents of the leasing company."

Plaintiffs claim they have exhausted all administrative remedies, which fact Defendants do not dispute. In that regard, Plaintiffs filed claims with US West in 1990–1991 asserting that each Plaintiff performed the "same or similar" functions as a US West employee and therefore should be allowed to participate in the Plans and receive benefits as "common law" employees. The BBC denied the claims because Plaintiffs allegedly did not satisfy the Plans' eligibility requirements. In 1991, Plaintiffs' counsel appealed this decision to the EBC. The EBC upheld the denial stating that the Plans limit coverage to "regular employees" as determined by the official service records of the Company.

Plaintiffs seek judgment as a matter of law as to their claims asserting that they are common law employees entitled to coverage under the Plans. Defendants deny that Plaintiffs are eligible to receive plan benefits and have filed a cross motion for summary judgment. Defendants assert that the Plans cover only "regular employees" as defined in the Plans, not common law employees, and that the Plans' language controls the determination of who received benefits.

## II. SUMMARY JUDGMENT MOTIONS

The parties have filed lengthy motions for summary judgment with voluminous exhibits and lengthy responses and replies. The following discussion addresses those portions of the motions that are pertinent to my decision.

### A. Summary of Plaintiff's Motion for Summary Judgment

The essence of Plaintiffs' argument is that they, as common law employees of U.S. West, are entitled to participate in U.S. West's pension and welfare plans. They argue that the Plans' explicit coverage for "regular employees" only is not controlling because, although an employer is not required to maintain a pension plan, if it does it cannot discriminate against its employees or set up arbitrary distinctions as to who should be covered.[1] Plaintiffs contend that Defendants admit that fiduciaries cannot administer a plan in a manner inconsistent with ERISA, which is precisely what the administrator did by disregarding and making a decision contrary to ERISA's definition of "employee" and its minimum participation requirements.

In short, Plaintiffs contend that the minimum application and and eligibility requirements are driven by the statutory language of ERISA, not the plans of the employer. As such, the primary question is whether or not the Plaintiffs are "employees" as defined by ERISA and common law. Plaintiffs rely on the Internal Revenue Code, the Tax Equity and Fiscal Responsibility Act, and decisions interpreting their meaning in support of their argument that they are common law employees. The primary case authorities urged by the Plaintiffs' in support of their position are *Renda v. Adam Meldrum & Anderson Co.*, 806 F.Supp. 1071 (W.D.N.Y. 1992) and *Crouch v. Mo–Kan Iron Workers Welfare Fund*, 740 F.2d 805 (10th Cir.1984).

Finally, Plaintiffs argue that a de novo standard of review should apply rather than the arbitrary and capricious standard. Plaintiffs acknowledge that courts apply an arbitrary and capricious standard when the Plan gives the administrator discretionary authority to determine eligibility for benefits, which is the case here. However, Plaintiffs assert that the de novo standard should apply because the deposition testimony of Defendants' designated representative establishes that the administrator, in reality, had no discretion to include temporary employees under the Plans' provisions. The administrator's representative acknowledged that the administrator had to summarily deny Plaintiffs' claims without any investigation of their status as an employee because of the Plans' language that limited coverage to "regular" employees. Plaintiffs also argue that the de novo standard of review is appropriate because of a conflict of interest which arose because US West used its own employees to administer the Plan. Further, Plaintiffs argue that even under an arbitrary and capricious standard of review, they should prevail on their summary judgment motion because the administrator failed to consider whether they were common law employees as required by law.

### B. Summary of Defendants' Motion for Summary Judgment

Defendants argue that the arbitrary and capricious standard of review is applicable rather than the de novo standard because the Plans conferred discretion on the administrator regarding all aspects of plan administration and interpretation. Thus, Defendants assert that the role of the Court is to determine whether the plan administrator made a

---

1. As an example, Plaintiffs argue that if US West adopted ERISA benefit plans which precluded all individuals with law degrees from participation, such requirement would be valid under U.S. West's argument. However, such exclusion would be clearly unlawful.

rational decision based on the record before it at the time the decision was made.

Defendants argue that the administrator's decision was neither arbitrary nor capricious nor contrary to law, and that the administrator would have breached its fiduciary duties had it determined that Plaintiffs were entitled to coverage since the Plaintiffs were not "regular employees" on US West's official service records as required by the terms of the Plans. Defendants assert that the Plaintiffs concede this critical fact. Defendants further argue that Plaintiffs' primary argument that they were common law employees of US West and should be entitled to benefits is not even relevant since the inquiry is limited to whether they were eligible employees as defined by the Plans.

Defendants argue that the limitation in its Plans to coverage of "regular employees" is legal. Nothing in the ERISA minimum funding laws or other federal laws requires the inclusion of "non-regular" common law employees. Moreover, the IRS Code relied on by Plaintiffs does not prohibit a plan from excluding certain groups of employees from participation so long as the group that does participate is nondiscriminatory, and a violation of those sections would only operate to deprive a pension plan of qualified status, not make it illegal. Further, Defendants point out that there are legal impediments to US West covering "leased" employees and retaining its tax exemption under the Pension and Savings Plan. Finally, Defendants assert that neither the ERISA minimum funding requirements nor the IRS Code applies to welfare plans. In support of their arguments, Defendants rely primarily on *Abraham v. Exxon Corp.*, 85 F.3d 1126 (5th Cir. 1996) and *Vizcaino v. Microsoft*, No. C93–178D, slip op. (W.D.Wash. July 7, 1994).

## III.  *ANALYSIS*

### A.  *Introduction*

29 U.S.C. § 1132(a) provides, in pertinent part: "[a] civil action may be brought—(1) by a participant or beneficiary—(B) to recover benefits due him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits

under the terms of the plan." 29 U.S.C. § 1132(a)(3) provides, in pertinent part, that a participant, beneficiary or fiduciary may bring suit "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) enforce any provisions of this subchapter or the terms of the plan."

■■■ I find that Plaintiffs are "participants" since they are "employee[s] or former employee[s] of an employer, or ... member[s] or former member[s] of an employee organization who ... may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization." *See* 29 U.S.C. § 1002(7). In order for the employee to show that he or she "may become eligible" to receive benefits, "a claimant must have a colorable claim that (1) he or she will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 117–118, 109 S.Ct. 948, 958, 103 L.Ed.2d 80 (1989). I conclude that Plaintiffs have adequately demonstrated that they possess a colorable claim that will allow them to prevail in a suit for benefits.

It is also undisputed that the Plans at issue are covered by ERISA as they are all "employee benefit plans" as defined in ERISA. *See* 29 U.S.C. § 1002(1)–(3). Finally, it is undisputed that US West and MSTT are or were "employers" and "plan sponsors" within the meaning of ERISA. *See id.,* § 1002(5), (16)(b). EBC is the administrator of the Plans, although BBC was previously a plan administrator for the Sickness Plan, the Health Care Plan and the Group Life Plan (collectively "the US West Welfare Plans"). *See id.,* § 1002(16)(A).

Thus, the main issues to be decided in connection with the two summary judgment motions are: (1) the standard of review to be used by the Court in evaluating the administrator's decision, and (2) whether the minimum participation, vesting and funding requirements of ERISA require US West to include leased employees who meet the defi-

nition of "common law" employees within its Plans' coverage.

## B. *Standard of Review*

■ I find that the de novo standard of review applies rather than the arbitrary and capricious standard because I must decide questions of law. In reaching this decision, I recognize that where plans give the administrator broad discretion to administer the plan, such as here, I would generally be required to review the decision under an arbitrary and capricious standard. *Firestone, id.; Averhart v. US WEST Mgmt. Pension Plan*, 46 F.3d 1480 (10th Cir.1994) (court determined that US WEST's pension plan was subject to arbitrary and capricious standard).

However, the real issue in this case is not whether the administrator properly applied the terms of the plan; rather, it is whether, as a matter of law, the administrator was required to include Plaintiffs within the coverage provisions of the Plans. Courts have long recognized that questions of law are reviewed under a de novo standard of review rather than an arbitrary and capricious standard. *See Sage v. Automation, Inc. Pension Plan and Trust*, 845 F.2d 885, 890 (10th Cir.1988) (citing *Bruch v. Firestone Tire & Rubber Co.*, 828 F.2d 134, 149 (3rd Cir.1987), *aff'd in part and rev'd in part on other grounds*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)); *see also Weil v. Retirement Plan Admin. Comm. of the Terson Co*, 913 F.2d 1045, 1049 (2nd Cir.1990), *aff'd in part and vacated in part on other grounds*, 933 F.2d 106 (2nd Cir.1991); *Holt v. Winpisinger*, 811 F.2d 1532, 1536 (C.A.D.C.1987); *Riley v. MEBA Pension Trust*, 570 F.2d 406, 410 (2nd Cir.1977).

## C. *Whether the Minimum Participation, Vesting and/or Funding Requirements of ERISA Require US West to Include Common Law "Leased" Employees in its Plans' Coverage*

As noted above, the issue that I must review is not whether the administrator correctly interpreted the Plans, but whether the administrator complied with the legal requirements of ERISA, including the mini-

mum participation requirements. Understanding the correct issue is relevant in distinguishing cases upon which Defendants rely which hold that plan administrators can discriminate when determining what employees are subject to coverage under a plan. I note that if the issue presented to the Court was whether under the terms of its Plans US West must include all employees, or even whether US West is required by law to include all employees in its Plans, I would have to conclude that the answer is no and grant summary judgment in favor of US West.

■ The Tenth Circuit holds that " '[a]n employer is free to develop an employee benefit plan as it wishes because when it does so, it makes a corporate management decision, unrestricted by ERISA's fiduciary duties.' " *Averhart*, 46 F.3d at 1488 (quoting *Haberern v. Kaupp Vascular Surgeons Ltd. Defined Benefit Pension Plan*, 24 F.3d 1491, 1498 (3rd Cir.1994)). Moreover, the fact that an employer may have "discriminated" against plaintiffs by denying them benefits is not relevant, since " 'ERISA does not mandate that employers provide any particular benefits, and does not proscribe discrimination in the provision of employee benefits.' " *Id.* (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 91, 103 S.Ct. 2890, 2896–97, 77 L.Ed.2d 490 (1983)); *see also McGann v. H & H Music Co.*, 946 F.2d 401, 408 (5th Cir.1991), *cert. denied*, 506 U.S. 981, 113 S.Ct. 482, 121 L.Ed.2d 387 (1992) ("ERISA does not broadly prevent an employer from discriminating in the creation, alteration or termination of employee benefit plans.") Finally, a plaintiff cannot argue that the administrator breached fiduciary duties when it administered the plan according to its terms. *Averhart*, 46 F.3d at 1489 n. 6.

■ However, I find that these cases are inapposite to the case at hand because there was no assertion therein that the administrator had failed to comply with the minimum participation, vesting and funding requirements of ERISA. Thus, I must determine a different issue; namely, whether the minimum participation standards of ERISA require US West to cover leased employees in

its Plans if they meet the definition of a "common law" employee.

I find that resolution of this issue depends on whether the plan is a welfare plan or a pension plan. The Tenth Circuit holds that "trust and welfare plans require administration in compliance with the provisions of the Labor Management Relations Act of 1947, ERISA, and all applicable rules and regulations of the United States Department of Labor and the Internal Revenue Service." *Crouch*, 740 F.2d at 808. However, the Tenth Circuit makes clear that "welfare benefit plans are exempt from the participation, vesting and funding requirements [of ERISA]." *Id.* at 807. Moreover, "the law permits a welfare plan to discriminate against particular employees." *Id; see also Lockheed Corp. v. Spink*, —— U.S. ——, 116 S.Ct. 1783, 135 L.Ed.2d 153 (1996) (ERISA does not mandate what kind of benefits employers must provide and employers are generally free under ERISA, for any reason at any time, to adopt, modify or terminate welfare benefits). Thus, as to welfare plans, I agree with Defendants that Plaintiffs are not entitled to coverage under the welfare plans. Accordingly, Defendants' Motion for Summary Judgment is GRANTED and Plaintiffs' Motion for Summary Judgment is DENIED as to Plaintiffs' coverage with respect to the welfare plans at issue.

█▌  A different result applies, however, to the pension plans. As the Tenth Circuit stated in *Crouch*, "nothing in the portion of ERISA contained in the labor sections of the Code expressly preempts pension plans from the minimum participation, vesting, and funding requirements of ERISA..... Rather, 29 U.S.C. § 1052(a) expressly sets forth minimum participation standards...." *Id.* at 808. Thus, I must determine whether the minimum participation, vesting and funding requirements of ERISA apply to require the inclusion of common law "leased" employees in US West's pension plans.[2]

There are no cases directly on point from the Tenth Circuit. The only two cases that I could locate that discuss the precise issue

raised by this proceeding are *Renda* and *Abraham*. *Renda*, in my opinion, is the better reasoned decision and buttresses Plaintiffs' position. There, the plan, as here, excluded employees who were not on the payroll and who were leased employees. The fact that the plan excluded the plaintiff was not determinative of whether plaintiff was an employee entitled to coverage under the plan. Instead, the court looked at the minimum participation requirements of ERISA to determine whether the plaintiff, as a common law employee, must be covered by the plan.

In that regard, the court noted that "the minimum participation standards of § 1052(a) were created '[t]o ensure that employee pension expectations are not defeated.'" *Id.*, 806 F.Supp. at 1081 (quoting *Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 510 n. 5, 101 S.Ct. 1895, 1899–1900 n. 5, 68 L.Ed.2d 402 (1981)). With regard to the scope of § 1052(a), the court stated:

> ERISA does not require employers to provide employees with pension plans, but it does require employers with plans to meet ERISA's minimum standards for participating in the plan, accrual of benefits and vesting of benefits. ERISA requires that an employee must be eligible to participate in a plan after 'he completes 1 year of service,' which for ordinary workers is defined as 1,000 hours of employment in a 12 month period. 29 U.S.C. § 1052(a)(3)(A). Similarly, ERISA requires that an employee accrue benefits after a 'year of participation' defined as 1,000 hours of employment in a 12 month period. 29 U.S.C. § 1054(b)(3)(C).

*Id.*

The court in *Renda* also examined the Internal Revenue Code ("IRC") and the Treasury Regulations in making its determination as to whether the plaintiff should be included in the plan's coverage. The court held that IRC § 410(b) is a parallel provision to Section 1052(a) as it is "concerned with the minimum coverage requirements which may

---

**2.** I do not attempt herein to distinguish which Plans are welfare plans and which Plans are pension plans. If the parties have any dispute

over this, the parties may ask the Court to address this issue at a later time.

be imposed in order for an employee to be eligible for a qualified trust...." *Id.* at 1082. The Court further held that IRC § 414, "specifically directed to the identification of leased employees, demonstrates that such individuals must be accorded full employee status for purposes of determining their rights under the specified sections." *Id.* at 1080. In fact, Treasury Regulation § 1.410(b)(9), which "elaborates as to the definition of 'employee'.", defines an "employee as 'an individual who performs services for the employer who is either a common-law employee of the employer ... or a leased worker....'" *Id.* at 1082 n. 7. Finally, Regulation § 1.410(b)(4) "describes more thoroughly the manner in which an employer's participation requirements may in actuality discriminate against certain classes of employees." *Id.* at 1082.

In relying on the Treasury Regulations, the court in *Renda* rejected an argument that the Treasury Regulations are only relevant to determining a plan tax's status. The court stated, "the applicability of these Treasury Regulations to ERISA has been recognized through legislative decree and prior judicial determination, not only for the purpose of determining a plan tax's status but also as persuasive authority in determining the rights of an employee to participation in an employee benefit plan." *Id.*

Applying § 1052(a) and the Treasury Regulations to the plaintiff, the *Renda* court concluded that the plaintiff was a common law employee who met "the minimum participation requirements of § 1052(a) and is a participant who is entitled to benefits under 29 U.S.C. § 1132(e)." *Id.* The court relied heavily on the Tenth Circuit's decision in *Crouch* in support of its holding.

Although *Crouch* is not directly on point to the case at bar, it does indicate that the Tenth Circuit has construed the minimum participation requirements of ERISA to require inclusion of certain categories of employees in pension plans even though the language of the plans exclude those employees. Moreover, in determining what employees should be included, the Tenth Circuit in *Crouch* made clear that the Treasury Regu-

lations are relevant to such a determination. The *Renda* court, in that regard, stated: [i]t is apparent from cases like *Crouch* that the[ ] [Treasury] regulations are not to be implemented only for the narrow purpose of determining tax qualification. They are useful for extracting subtler shades of meaning necessary to paint a more detailed portrait of an individual's substantive rights under ERISA.

*Id.* at 1083.

Specifically, the Tenth Circuit in *Crouch* held that employees who worked thirty (30) hours a week and had been excluded from coverage under a pension plan were entitled to be included in the plan's coverage because ERISA expressly sets forth minimum participation, vesting, and funding requirements which had no exception applicable to a person in the plaintiffs' position. The Tenth Circuit's holding was based upon a finding that, since the plan qualified as a plan "under which the employer's contributions are tax deductible in the year paid, the income of the trust is not taxable, and participants are not taxed on the contributions made on their behalf, it must meet the more detailed requirements set forth in the Internal Revenue Code ... which participation and vesting rules require the inclusion of a person in the plan." *Id.* at 808–809. The Tenth Circuit looked to both the Internal Revenue and the Treasury Regulations (§ 1.410(a)–1(a)(1)) to determine whether there was an exception applicable to plaintiff. Finding no exception, and finding that "there are obvious and significant benefits to meeting th[e] requirements [of ERISA]," the Tenth Circuit held that it "must construe the plan as including plaintiff as a participant." *Id.* at 809.

On the other hand, the Fifth Circuit rejected the reasoning of both *Renda* and *Crouch* in *Abraham*, finding that *Renda* was not well reasoned and that the holding of *Crouch* was limited to plans which expressly state that they must be construed in accordance with ERISA. The Fifth Circuit held, among other things, that "leased" or "special agreement" employees were not entitled to benefits under an ERISA plan because the minimum participation requirements of ERISA only forbid employers from exclud-

ing employees on the basis of age or length of service and do not prohibit participation requirements which discriminate against leased employees. *Id.,* 85 F.3d at 1130–1131. Further, the Fifth Circuit concluded that treasury regulations which set forth factors to be considered regarding leased employees only determine whether the plan is qualified and do not create substantive rights under ERISA which allow the court to rewrite the plan to include these employees. *Id.* at 1131.

Similarly, the court in *Vizcaino,* an unpublished opinion, granted summary judgment in favor of an employer who denied the claims of "freelancers" for plan benefits because the "freelancers," although "common law" employees, were not "regular" employees as defined under the plan. Defendants argue that these cases clearly show that a plan administrator can lawfully limit participation to "regular employees."

I decline to follow the rationale of *Abraham* and *Vizcaino.* As noted above, I conclude that *Renda* is the better reasoned opinion and adopt its reasoning herein, particularly since the *Renda* analysis is derived, in part, from the Tenth Circuit's holding and reasoning in *Crouch.* I do not agree with the Fifth Circuit's determination that *Crouch* was limited to plans that expressly stated that they were to be construed to meet the requirements of ERISA, as *Crouch* did not base its holding solely on the plans' language regarding ERISA. Instead, the Tenth Circuit specifically noted that pension plans must comply with the requirements of ERISA and its minimum participation, vesting and funding requirements. *Crouch* at 808. I believe that it clearly follows from this holding that the requirements of ERISA must be complied with regardless of the plan's particular language regarding ERISA.

Applying the analysis in *Renda* and *Crouch* to the case at hand, I find that the minimum participation, vesting and funding requirements must be complied with by the plan administrator, regardless of the language of the plan. Further, I find that these minimum standards require the inclusion in the case at hand of leased employees who meet the definition of common law employees under law.

However, this brings me to the next issue, whether Plaintiffs have established that they meet the definition of a common law employee such that they are clearly entitled to be included in the pension plans' coverage. *See Nationwide Mutual Ins. Co. v. Darden,* 503 U.S. 318, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992); *Roth v. American Hospital Supply Corp.,* 965 F.2d 862 (10th Cir. 1992) (wherein the Courts interpreted the term "employee" as that word is used in ERISA to incorporate traditional agency law criteria (the common law test) for identifying who is an employee subject to coverage under the Plan). I am unable to determine from the record whether Plaintiffs meet the definition of a common law employee, particularly since US West did not substantively address this issue because it contended that it was irrelevant. Accordingly, I will order supplemental briefing and conduct an evidentiary hearing on the issue of whether Plaintiffs are common law employees so that I can then determine whether summary judgment is appropriate as to the pension plans.

## IV. CONCLUSION

For the reasons stated above, it is

ORDERED that Defendants' Motion for Summary Judgment is GRANTED and Plaintiffs' Motion for Summary Judgment is DENIED as to welfare plans, as that term is defined in this opinion. It is

FURTHER ORDERED that the Defendants shall file a supplemental brief on the issue of whether or not Plaintiffs meet the definition of common law employees within thirty (30) days from the date of this Order. Plaintiffs shall have fifteen (15) days thereafter to file a response to Defendants' supplemental brief. Finally, it is

FURTHER ORDERED that an evidentiary hearing on the issue of whether Plaintiffs meet the definition of common law employees is set for January 17, 1997 at 3:00 p.m.